ELLEN B. FRENCH v. JOHN RYAN, JAMES RYAN, AND MARK CARRINGTON.

*False representations — Partnership — Fraud of one member of firm—Bills and notes—Evidence.*

1. Where counsel for the appellant devote the major portion of their brief to the discussion of the main question involved in the case, and simply refer, without discussion, to the remaining questions. the Court are not called upon to elaborate upon such latter questions.

2. Representations as to the probable earnings of a corporation which the party making them desires to organize, made to induce the party to whom they are made to become a stockholder in the corporation, may be fraudulent and constitute a basis of action if made in bad faith, with a design to deceive and mislead said party, by one possessed of superior knowledge on the subject.

3. Pursuant to a scheme to unload the business of a firm, which

104 MICH.—40.

| 104 | 625 |
|-----|-----|
| 106 | 71 |
| 104 | 625 |
| s62NW | 1016 |
| 130 | ²72 |
| 104 | 625 |
| s62NW | 1016 |
| 131 | ⁴247 |
| 104 | 625 |
| 139 | ²222 |
| 104 | 625 |
| 153 | ⁴115 |

had become unprofitable, and its property, which was heavily incumbered, upon a corporation to be organized as a part of the scheme, one of the partners, by fraudulent representations as to the profits of the firm business and the persons who were to join in forming the corporation, induced a party to subscribe for some of the corporate stock, in payment for which he gave his promissory note, which was transferred to the other partner. In consummation of the scheme the firm property was transferred to the corporation, and, by reason of the fact that the two partners controlled the directorate, the same was credited to the partner who made the false representations, on the books of the corporation, at a figure largely in excess of its actual value and of the value of which it had been agreed to be taken. And in a suit upon the note it is held that, although a fraud may have been perpetrated upon the corporation, the whole scheme was none the less a fraud upon the maker of the note, for which the partner to whom it was transferred must be held liable, not only because a beneficiary, having received the proceeds of stock subscriptions, but because a participant in the final act which gave color to the whole transaction.

4. It was competent for the maker of the note, in support of his defense that he was induced to subscribe for the stock for which the note was given by such fraudulent representations, to show that like representations were made by the same partner to other persons to induce them to become stockholders in the corporation; citing *Beebe v. Knapp*, 28 Mich. 53; *Cook v. Perry*, 43 Id. 623; *Stubly v. Beachboard*, 68 Id. 401.

Error to Wayne. (Brevoort, J.) Argued January 30, 1895. Decided April 16, 1895.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Atkinson & Haigh (W. T. Mitchell,* of counsel), for appellant.

*Elliott G. Stevenson,* for defendants.

McGRATH, C. J. This suit is brought upon a promissory note of $5,000, made by John Ryan, indorsed by James Ryan, and given in payment for a subscription to

stock in the Port Austin Manufacturing Company, a corporation. The defense is fraud and misrepresentation respecting the business to which the corporation succeeded, and concerning the parties who were to join in the new enterprise and the amount of capital which had been secured. The fact that Mark Carrington is the real owner of the note is not seriously questioned.

Thomas Winsor and his father-in-law, Mark Carrington, had for some years been engaged in business, as Thomas Winsor & Co. They had a sawmill and salt blocks and a general store. The evidence tended to show that the sawmill was without available timber, and that the salt blocks had not been operated for some time, except at a loss; that the general business of the firm had been unprofitable, and Carrington and Winsor were anxious to dispose of it; that their real estate was incumbered for $22,000, which was more than its value; that they had on hand a stock of merchandise, some salt, logs, horses, wagons, and other personal property, and their unsecured indebtedness amounted to $9,000. John Ryan was induced by Thomas Winsor to take stock in the new enterprise. He first took $5,000 worth of stock, and paid for it, and was induced to subscribe for further shares, the par value of which aggregated $5,000, for which the note in question was given.

There is no question upon this record but that there was sufficient evidence to go to the jury as to whether Thomas Winsor had not been guilty of fraud and misrepresentation as to the profits of the business of Thomas Winsor & Co., and also respecting the persons who were to join in the enterprise and furnish the capital. The principal contention is that Mark Carrington was not connected with the fraud, and that whatever misrepresentations were made were not brought home to him. The theory of the defense was that the scheme was to unload

the assets of Thomas Winsor & Co. and the unprofitable business upon the new corporation, and to absorb the capital paid in. Winsor represented that the real estate would be turned in at the face value of the mortgage thereon, and that the personal property was worth about $10,000; that Carrington was to take $10,000 worth of stock, and that he (Winsor). was to take $10,000; that Carrington's stock was to be charged up against the personal property, and, if any balance remained, it was to be credited upon Winsor's stock account, and he would pay the balance in cash. It is clear from Carrington's testimony that he understood that this was the basis that was being suggested. John Ryan paid for his first block of stock as follows: Cash, $300; a deed to Mark Carrington of real estate of the value of $1,200; a note for $1,000, which he afterwards paid; and a deed of another parcel of land worth $2,500, to one Smith. Smith afterwards conveyed to Winsor, and Winsor to Carrington. One Newell subscribed to stock, paid $300 in cash, and gave his note for $1,200. The note in controversy here is alleged to have been discounted at the bank, but the cashier testified that the money was furnished by Mark Carrington; that $1,000 of the amount was credited to Thomas Winsor & Co., and the balance was paid out for the benefit of the company. James Ryan subscribed for $5,000, and paid for it by turning over 400 acres of land and the balance in cash. T. Winsor & Co. received the proceeds of this stock, of the John Ryan note of $1,000, and the Newell note of $1,200; and the testimony tended to show that but a small portion of the proceeds of the sales of stock reached the treasury of the corporation. Carrington and Winsor controlled the corporation, and upon its books, notwithstanding vigorous protest, the real estate and personal property of Thomas Winsor & Co. were credited to Thomas Winsor individually,—the former at $35,000, and

the latter at $17,099,—and he was charged with the Carrington stock, the James Ryan stock, and John Ryan's first subscription of $5,000, making a total of $20,000, one-half of which had been paid in cash or its equivalent. Winsor represented that Carrington had capital which would be substituted in lieu of the conveyances of land made by subscribers. It would seem, therefore, that, from the start, both Carrington and Winsor began to appropriate the proceeds of the stock, and afterwards, to cover the appropriations so made, an inflated value was given to the assets of Thomas Winsor & Co. upon the books of the corporation. The evidence clearly indicates that the value of the real estate did not exceed $22,000. The mortgagee held a large amount of collaterals to secure the amount of the mortgage indebtedness. The corporation was organized in February, 1886. It failed in August, 1887, and the real estate was conveyed back to Mark Carrington, who says that at that time he offered to deed the real estate to the creditors if they would assume and pay the mortgage, but they declined to do so.

If the assets of Thomas Winsor & Co. had been sold to John Ryan, and as a part of the consideration the note in suit had been given, Carrington could not be heard to say that he was not chargeable with the fraud and misrepresentation of his partner, Thomas Winsor, respecting the inducements to make the purchase. It is true that the assets were not sold to John Ryan, but nevertheless the fraudulent scheme involved the disposition of these very assets. That, it is insisted, was the primary purpose. The corporation, it is claimed, was but a means to an end. The note does not appear to have ever reached the corporation, to have passed through its books, or to have been discounted by the corporation. John Ryan was induced to take the additional stock upon Winsor's assurance that Carrington would take the note, and advance to the cor-

poration the money for the former's stock. Carrington did take the note, and, conceding that he did advance the money upon it, he is seeking to recover upon a promise which Ryan was induced to make by the fraudulent inducements held out to him by Winsor, in order to enable T. Winsor & Co. to dispose of the business. Carrington, by accepting the avails of the scheme, must be deemed to have adopted the means by which the avails were secured. If a scheme was concocted to unload the business and property of T. Winsor & Co. upon the corporation, and misrepresentations were made respecting said business to induce John Ryan to take part in the enterprise, and in pursuance of that scheme the property was transferred to the corporation, and contrary to the expressed understanding of the parties, and by reason of the fact that Winsor and Carrington controlled the directorate, that property was credited to Winsor upon the books of the corporation at a figure largely in excess of its actual value, although a fraud may have been perpetrated upon the corporation, the whole scheme was none the less a fraud upon John Ryan, for which Carrington must be held liable, not only because a beneficiary, but because a participant in the final act which gives color to the entire transaction.

It was entirely competent to show like representations made to Newell, Van Wert, and Campbell. *Beebe v. Knapp*, 28 Mich. 53; *Cook v. Perry*, 43 Id. 623; *Stubly v. Beachboard*, 68 Id. 401.

Representations as to the probable earnings of the enterprise were not necessarily fraudulent. They may be mere expressions of opinion made in good faith, and, in such case, could not be made the basis of recovery; but if made in bad faith, by one who is possessed of superior knowledge respecting such matters, with a design to deceive and mislead, the party making them must respond.

A number of questions are raised as to the admission of

testimony.   This is, however, a case where fraud is alleged, and as bearing upon that question a wide range of inquiry has usually been permitted.

We have examined the charge of the court, and do not discover any error to plaintiff's prejudice.

Counsel for appellant have devoted the major portion of their brief to the discussion of the main question, which we have considered fully herein.   To the other questions counsel have simply referred without discussion.   In such case we do not feel called upon to elaborate upon questions so treated by the briefs.

The judgment is affirmed.

The other Justices concurred.