### MOON v. McKINSTRY.

1. VENDOR AND VENDEE—FALSE REPRESENTATIONS—STATEMENTS AS TO VALUE.

Whether representations made by the vendor of real estate as to the value of the property sold are mere expressions of opinion, or such representations as, if false, will support an action by the vendee, is a question for the jury, even though the vendee saw the property before purchasing, where the evidence tends to show that he told the vendor that he had no knowledge of the value of the land, and would have to rely entirely on the vendor's representations, and the latter replied that he might do so.

2. SAME—EVIDENCE.

The truth of a representation that certain land had sold for a specified amount is not established, as a matter of law, by proof that it had been so valued upon an exchange for other property.

Error to Wayne; Donovan, J. Submitted December 6, 1895. Decided December 24, 1895.

Case by Thaddeus B. Moon against Robert McKinstry

for false representations on the sale of real estate. From a judgment for plaintiff, defendant brings error. Affirmed.

*Casgrain, Sullivan, Mason & Dwyer*, for appellant.

*Lemuel H. Foster*, for appellee.

LONG, J. This cause was commenced by *capias ad respondendum*, the declaration setting forth that the defendant, by means of certain false and fraudulent representations, induced the plaintiff to purchase from him four certain lots of land in Windsor, Ontario, for the sum of $1,500; that the defendant represented the title to said property to be in himself; that he could give a perfect title; that the lots were worth $400 each; and that lots in that neighborhood were selling right along for that amount each. The plaintiff further alleged that the defendant had no title to the lots in question; that they were not worth $400 each; that lots in that neighborhood were not selling right along for $400 each, which the defendant well knew; that the representations were made for the purpose of inducing the plaintiff to purchase; that these representations were false and fraudulent; but that plaintiff relied upon them as being true, and was induced thereby to purchase. The defendant pleaded the general issue. The case was tried before a jury, and resulted in a verdict and judgment for the plaintiff for the full sum of $1,500 and interest.

1. The first question raised is that the trial court erred in not charging the jury to find for the defendant, as requested. It will be necessary to state some of the facts relating to the issue, in order to an understanding of the question here raised. The defendant resides in the city of Detroit, and was engaged in the real-estate business. He is a man of affairs. The plaintiff, who is a distant relative of his, sought him out on September 18, 1894, to ascertain where he (the plaintiff) could safely

deposit $1,500, which he had brought with him from his home in Denton, a small station about 25 miles from Detroit, he being a telegraph operator there. The defendant introduced him at the Preston National Bank of Detroit, and plaintiff deposited his money there, taking a certificate of deposit for it. October 12th following, defendant wrote him a postal card, asking him to call at his first visit to the city, as he had something to tell him which he would like to hear. This card was received by the plaintiff, and on Monday, October 15th, he went to Detroit, saw the defendant, and inquired what it was he wanted to see him about. The plaintiff testifies to what took place thereafter substantially as follows: That the defendant told him he had been thinking about the deposit he had put into the bank, as he (the defendant) had some property in Windsor he would like to sell, and, if he (the plaintiff) wanted to invest his money, it was a good opportunity; that the defendant then showed him a plat, and explained it, and marked off lots that he had sold, and said all the lots marked off were sold; that he used a pencil, and marked off lots on the different streets —some 50 of them—as sold. The plat was shown the witness, and he identified it as the one exhibited to him by the defendant, the long lines representing the lots sold,— 50 in number,—and the small crosses the four lots which the plaintiff purchased that day. Plaintiff was then asked to relate the statements made to him by the defendant at that time, and stated as follows:

" Why, my friend McKinstry, he went on to state to me that this Windsor property was on the boom. He talked gas, and talked about Daniel Scotten, and read me a good many newspaper clippings he had marked, and he had a good deal to say about Windsor property; thought it would be very safe and very advisable for me, and he thought that as long as I had the money, and doing nothing with it, it would be a grand opportunity, to invest this money in Windsor. I told him I had no knowledge of the value of property in Windsor, and never had been in it, except to pass through on the cars. I had no

idea of the value at all. And during this conversation with my cousin, he represented to me that this was what he called extremely good property on an investment, and he represented to me that he had already disposed of the greater part of these lots on this subdivision at $400, and he told me, towards the end of the conversation, he would sell me four lots,—four of these lots that he had had $1,600 for; he needed this money,—he would sell me the four lots for $1,500 I had in bank; and he wanted to show me the property, and we got onto the ferry, and went across, and looked at the lots; and, when we came back, I tried to persuade him I wanted a little more time to consider the advisability of buying these lots; I wanted to think about it; I did not come down there that day to invest any money, or do anything rashly; not knowing more about the business than I did, I wanted to have time to look it up; but he insisted upon my buying the property that day, and he says: 'I will guarantee you can sell those lots for $500 apiece without any trouble.'"

The plaintiff further testified that defendant said the lots were worth $400 quick, but he was going to give the plaintiff a great bargain. The plaintiff, continuing, says:

"I told him he had the long end of the lever on me, as I was not acquainted with Windsor, or anything in regard to the value of real estate there; * * * and, along at the end of the conversation, I told my cousin I would have to rely implicitly on his statement and his representations of the value of the property, and I had no knowledge of it, and would have to depend upon him wholly for the truth of the representations he made to me; * * * and he told me I could rely perfectly on what he said."

The deal was then closed, the plaintiff indorsing over to the defendant the certificate of deposit, and taking a deed of the lots. The deed was drawn upon a Michigan form. It was arranged that the plaintiff should come back to Detroit in a week or 10 days, and defendant would go with him, and have the deed recorded. The plaintiff returned there about a week later, and found the defendant busy, and went alone to Sandwich, to have his deed recorded. He found the deed could not be re-

corded, because not upon the proper form.  Upon returning to Windsor, plaintiff made some inquiries for the first time about the value of the property.  He returned to Detroit, met the defendant, and told him of the refusal to record the deed, and what he had learned as to the value of the property purchased, and he then informed the defendant that he could buy much better property at $100 a lot cheaper, and he thought defendant had swindled him out of $1,000 on the deal.  He tendered the deed back to defendant, and demanded his money.  This the defendant refused, and stated to plaintiff he would execute a deed on the Canadian form, which plaintiff told him he would not receive.  Thereafter defendant made a deed upon the Canadian form, and mailed it to plaintiff, and put it of record in Sandwich.  Plaintiff afterwards deeded back the lots to the defendant.

It appears that, at the time the deed was made, the defendant held this tract of land under contract of purchase; that he thereafter obtained title to the four lots sold to plaintiff by paying a portion of the money received from the plaintiff for them.  The defendant admitted all that plaintiff claimed in relation to the sale of the lots, the receipt of the money, and the representations that were made relative to the sale of other lots at $400 each, and insisted that the lots sold were worth $400 each.  Considerable testimony was given in the case,—that by the plaintiff tending to show that the lots were worth much less than $400, some of the witnesses putting them down as low as $75 each, and others, on the part of defendant, valuing them at $400 each.  The defendant also contended that he had sold the other lots at $400 each; but it appears in almost if not in every instance that they were not cash transactions, but exchanges made of the lots for other property.  Three of the lots so marked off the plat were sold to Mr. Wilkinson, a lawyer in Detroit.  No money was paid, but two notes were given for $50 each, and the balance was an exchange of property.

Six lots were thereafter sold, it is claimed, for $400 each; but defendant put the consideration in the deed at $3,000, and says he got property on that deal. Referring to a sale to one Ryan of four lots, the defendant admits that it was a trade, and says: " I had to put in more property than this. I put in a patent right. I did not get any money at all. I had to pay on the property besides that." Lots were also sold to Mr. Coleman, and this was in exchange for other property, the defendant assuming the incumbrance on the other property. In the sale to Mr. Hendrick, defendant received no money, but took property in exchange. In the sale to the Talbot Paving Company, defendant received no money. It is unnecessary to state other sales by defendant of these lots marked off on the plat, and shown to plaintiff as sales of property; but it appears to be admitted by the record that no sales were made except upon exchange for other property, in which the exchange values were placed at $400 and upwards. We think the court, upon this state of facts, would not have been warranted in taking the case from the jury.

2. It is contended that the statements of value made by the defendant were expressions of an opinion, and cannot be made the foundation of a suit. The opinion of the vendor of property he is selling as to amount, quality, or value is frequently asked, and usually given, on sales, and is never actionable if no more than an opinion is expressed or honestly given. As was said by this court in Collins v. Jackson, 54 Mich. 186: " It is only when superior knowledge exists on the part of the vendor, and he knowingly gives a false opinion in regard to material facts, with the intention of defrauding the purchaser, that the latter can maintain an action." The representations in the present case as to the value of the lots, we think, are to be considered as something more than mere expressions of an opinion. The plaintiff knew nothing of the value of property in Windsor, and so informed the

107 MICH.—43

defendant, and stated to him that he must rely entirely upon his representations. In order to induce plaintiff to make a purchase, and as bearing upon the question of the value of the lots, the defendant represented that he had sold some 50 of them, which he marked off on the plat, at $400 each. Many of them were situated upon the same street as the lots purchased by plaintiff, and the balance upon the next street adjoining. Upon defendant's own showing, it does not appear that 50 lots were sold, or that there was a cash consideration for those that were sold, but that other property was taken in exchange; and the testimony of plaintiff's witnesses shows that these lots would not exceed in value $75 to $100 each.

The defendant requested the court to instruct the jury as follows:

" 2. The fact that plaintiff viewed the premises—*i. e.,* the lots in question—was a full notice to him of the true value of the lots. All remarks and statements made by McKinstry were matters of opinion only.

" 3. In all real-estate transactions, where the vendee has an opportunity of viewing the premises, the principle of *caveat emptor* applies, *i. e.,* the purchaser is on his own guard as to value, and all matters that could be seen or known by viewing the land and examining the land.

" 4. The testimony shows that McKinstry had such title in the lots as warranted him in contracting and agreeing to give a warranty deed. His subsequent acts prove this, as the warranty deed was passed to Moon exactly as agreed by McKinstry, and a good title has been conveyed."

The second request was given in part, but the court modified it by saying: " If you believe that they were mere matters of opinion expressed, and not misrepresentations, then you will find for the defendant." The court very properly made this modification. Under the testimony, it became a question of fact for the jury to determine whether the representations as to value were mere matters of opinion, or were assertions of fact, upon which the plaintiff had a right to rely; and, in determining this,

the jury had a right to take into consideration the representations made as to the sales of other lots. The defendant does not deny that he represented that he had sold the other lots at $400, but admits, upon his cross-examination, that it was in the way of exchange, and not for cash. We think the representations as to the sales of those lots were such as to induce the plaintiff to believe that they were cash sales, or, at least, that that was a question which the jury had a right to take into consideration in determining the falsity of the representations made.

Substantially, the court gave the third request to charge. It added, of its own motion, however, the following:

" I will leave it to the jury if the parties met on an equality in this respect as to the representations. It rests almost entirely between the two men. One says he insisted on taking the other over, and let him see the lots, and took time about it, and it was a satisfactory transaction; and the other says he was urged into it by the hour. Now you must decide between these parties as to the value. Fraud is not to be presumed from slight circumstances. It must be established like anything else."

We think the court fairly stated the rule of law in this charge as applied to the facts in this case.

While the court declined to give defendant's fourth request, he did state to the jury that—

" The defendant claims that he did not know much about Windsor deeds,    *    *    *    but was perfectly willing to correct the mistake. There is no doubt, gentlemen, that a slight complication as to the title arose early in the case, in the American deed, and defendant claims he had that corrected, and that he was willing to correct it all the way through;    *    *    *    and the real dispute is not so much about the title, as it is about the value. *    *    *    It is not so much about the deed to plaintiff, but the real issue is the value of the property at the time of this transaction."

We think, under these circumstances, the defendant has no right to complain that the fourth request was not given, even if he was entitled to have it given. The court treated the matter as though the only contention which the plaintiff made was over the value of the property; and it would seem, if any error was committed, that the plaintiff would have the better right to complain.

We have carefully examined the record, and are unable to discover any error.

The judgment must be affirmed.

The other Justices concurred.