| 108 | 725 |
| 111 | 279 |
| 108 | 725 |
| 114 | 185 |
| 108 | 725 |
| 116 | 478 |
| 108 | 725 |
| 118 | 196 |
| 108 | 725 |
| 130 | 550 |
| 108 | 725 |
| 136 | 228 |
| 108 | 725 |
| 137 | 427 |
| 137 | 655 |

# J. M. DORR v. L. S. CORY, Appellant.

Plaintiff conveyed lands in trust for a partnership and the trustee gave a mortgage back to the seller, then, the trustee made contract with defendant to hold part of the land in trust for him in consideration of certain payments to be made by defendant. This contract took note of plaintiff's encumbrance, and while it requires defendant to do certain things it does not provide that he shall have a conveyance when he performs them. After the trustee made this contract with defendant the partnership became a corporation which took all the property of the partnership, including the contract of defendant. This transfer was made subject to all rights of persons having a beneficial interest. The corporation obtained an extension of plaintiff's mortgage, giving defendant's contract as collateral, and plaintiff finally brought suit to recover on his mortgage debt and on said contract as collateral. *Held:*

    a.  The rights of the parties to a contract for the conveyance of an interest in land are not affected by a conveyance by the vendors of such contracts to their vendor as collateral security to obtain an extension of time of payment and the purchase price where such contracts were made subject to the encumbrances in favor of the original vendor and required the purchaser to pay his pro rata share of the costs of grading and improving the property but did not provide for a conveyance of the property contracted for when the required payments should have been made.

    b.  Since the corporation took conveyance impressed with a trust, binding on its grantor, the conveyance is no defense, on the ground that the partnership was unable to fulfill the contract.

    c.  Since the contract with the trustee contemplated possible changes in the trusteeship the transfer to the corporation subject to the contract did not affect the rights or liabilities of the contract holder.

**Evidence:** LAND SALE: *Conspiracy.* In an action on contracts for the purchase of land alleged to have been fraudulently obtained, a letter written by one of the members of a partnership with whom the contract was subsequently made referring to negotiations with another person for the purchase of the land but expressing the opinion that the latter's offer was not sufficiently favorable and suggesting that an attempt be made to interest defendant

in the matter, stating that if he was induced to come up the writer would stay by him to carry it the way he offered it to such other person and that if defendant came the writer would "fix him" is insufficient to show a conspiracy to defraud defendant where such other person had been received as a partner before the contracts were made with defendant.

**Sales: FALSE REPRESENTATIONS.** In an action for the price of land, where the evidence shows that defendant relied on his friendly relations with, and his confidence in, plaintiff, and believed his statements as to the value of the land, and the price which plaintiff had paid for it, and that such statements were false, it was error to direct a verdict for plaintiff.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

WEDNESDAY, APRIL 5, 1899.

ACTION at law on contracts in writing for the purchase of interests in real estate. A jury was impaneled, but when the evidence was fully submitted a verdict in favor of the plaintiff for the sum of four thousand nine hundred and seventy-eight dollars and twenty cents was returned by direction of the court, and judgment was rendered on the verdict. The defendant appeals.—*Reversed.*

*Preston & Moffit, C. A. Bishop,* and *Lore Alford* for appellant.

*Dudley, Coffin & Byers* and *Chas. L. Powell* for appellee.

ROBINSON, C. J.—On the fourteenth day of January, 1890, the plaintiff, then being the owner of all the lots and blocks included in the plat of West End, an addition to the city of Des Moines, conveyed all of that property, excepting one block, to J. H. Snoke, as trustee for a partnership known as the West End Syndicate. The partnership was composed of A. W. C. Weeks, R. G. Scott, and J. N. Neiman; and the conveyance was made in fulfillment of prior contracts. To secure a part of the purchase price, Snoke, as trustee for the

partnership, made and delivered to the plaintiff notes to the
amount of forty-seven thousand seven hundred and thirty-
six dollars and eighty-four cents, and, to secure their pay-
ment, executed to the plaintiff a mortgage on the property he
had conveyed. In February of the same year, Snoke,
as trustee, entered into ten contracts in writing with
the defendant, by each of which the trustee agreed to
hold in trust for the defendant the undivided 1-150 part
of the property which had been conveyed to the trustee,
for the sum of one thousand dollars, of which a part
was to be paid at the time the contracts were signed, and
the remainder thereafter, in four equal annual installments,
with interest thereon at the rate of six per cent. per annum.
In July, 1890, the members of the partnership incorpo-
rated under the name previously used, and all the property
of the firm, including the contracts with the defendant,
became vested in the corporation. In the year 1893, interest
on the notes made to the plaintiff by the trustee was due
and unpaid, and, to secure an extension of time, the syndicate
transferred to the plaintiff, to be held by him as collateral
security, the contracts with the defendant. The petition
alleges that there is due on the notes made to the plaintiff
the sum of fifty-two thousand five hundred and eighty-eight
dollars and forty-six cents and interest; that there is due
on the contracts entered into by the defendant the sum of
twelve thousand dollars. Judgment for that amount with
interest and an attorney's fee, is demanded against him.
The answer of the defendant pleads payment on the con-
tracts to the aggregate amount of seven thousand nine hun-
dred and fifty-seven dollars and six cents, and alleges that
the contracts were obtained by fraud; that a large portion
of the mortgaged property was sold, and the proceeds, which
should have been used in paying the claims of the plaintiff,
were appropriated by Weeks, Scott, and Neiman to their
own use; that Weeks retired from the combination in the

year 1891, and in June, 1892, one Jakaway·was elected sec-
retary, and that he, Scott, and Neiman sold large portions
of the mortgaged property, and collected large sums of money
on the sales, all of which they fraudulently failed to pay on
the claims of the plaintiff, and converted to their own use;
that the plaintiff took the contracts in suit with knowledge
of the fraudulent practices stated; that the consideration for
the contracts has failed, by reason of the abandonment of the
trust vested in Snoke, and the claims of the syndicate to own
the mortgaged property. The answer further alleges that the
plaintiff knowingly permitted Scott, Neiman, and Jakaway
to sell a large portion of the mortgaged property, and fraud-
ulently appropriate the proceeds thereof, to the amount of
about twenty thousand dollars, to their own use, without
making any payment on the mortgage debt, and that in con-
sequence the plaintiff is estopped to claim anything on the
contracts in suit, to the extent of the injury sustained by the
defendant; that the mortgaged property is of the value of
fifty-five thousand dollars, and plaintiff has commenced an
action to foreclose his mortgage, and should not be permitted
to maintain this action until he shall have exhausted the
mortgaged property, and then only for a proportional share
of the unsatisfied remainder for the payment of which the
defendant shall be found liable. In an amendment to his
answer the defendant avers that the transfer of the contracts
to the plaintiff was unauthorized by the syndicate, and that
the partnership is unable to carry out its agreement with the
defendant to hold the interests for which the contracts pro-
vide in trust for him, by reason of a mortgage on the prop-
erty, including those interests, for more than it is worth, in
consequence of which the consideration for the contracts has
failed. The verdict and judgment were for the amount
apparently due on the contracts and unpaid.

I. The defendant offered in evidence a letter written
by Scott to E. Jakaway & Boyd in June, 1888; but an

objection to it was sustained, and of that ruling the defendant complains. The letter referred to negotiations with Neiman, but expressed the opinion of the writer that his offer was not sufficiently favorable, and suggested that an attempt be made to interest the defendant in the matter. It is stated that, if the defendant was induced to come up, "we will stay right by him here, and get him to carry it in the way we offered it to Neiman;" also, "Get your man here, and we will fix him." We understand the matter referred to in the letter was the purchase from the plaintiff of the land which was subsequently platted as West End addition, a contract for which, entered into by Weeks and Scott with the plaintiff, was then outstanding. It is urged that the letter tends to sustain the claim of the defendant that a conspiracy to defraud him was entered into by the members of the West End Syndicate, and that what was done was in pursuance of that conspiracy. We do not think the letter tends to sustain that claim. We have quoted but a small part of it, but, taken as a whole, the letter shows that the writer believed the proposed venture would be a profitable one for the defendant and the others concerned, and that the terms on which Neiman offered to take an interest were regarded as exorbitant. The letter had no relation to the conditions which existed when Cory entered into the contracts in suit. Neiman had then been received as a partner in the syndicate, and the transaction with the defendant was not the one proposed in the letter. We conclude that the letter was properly excluded.

II. The agreed price for which the plaintiff sold the land in question to the syndicate was about fifty thousand dollars. The defendant went onto the land with Scott before purchasing, and testified in regard to what was done, and the conversation between them, as follows: "He showed me around. He said it cost eight hundred dollars an acre, and it was a one hundred and twenty-acre tract. I said that would make ninety-six thousand dol-

lars.  He said:  'Yes; but we propose syndicating it for
$100,000, and we are going to plat it in lots.'  I remarked I
did not think I should want to pay over $400 an acre for
it.  He said I would have to be educated to prices of land
in Des Moines, and I said:  'I expected; probably might
have made a wild guess on that, but did not exactly know
how that would be.'  He then cited me to a piece of land
west of it held at one thousand dollars an acre, a tract east
at one thousand five hundred dollars an acre, and the lots
to the north were selling for three hundred dollars to five
hundred dollars per lot.  He said the indebtedness back was
forty-seven thousand dollars, and the rest of the ninety-six
thousand dollars had been paid.  He said:  'We expect to
make fifty one thousand dollar time contracts, and the rest
we will keep for what we have put in on this; we would
keep them for the money we had already put in, and the
rest would buy those time contracts.'  He stated to me that
after it was in shape for sale the lots would range from
$150 to $1,000, and would be reasonably worth $350 on an
average.  He went on to state that there would be 800 lots at
$300, which would make $240,000, and he thought we would
get more than that out of it.  *  *  *  I took five con-
tracts with him.  *  *  *  He said that, on account of our
friendly relations, he would let me have these shares, and
would let myself and one other gentleman (Calvin) in on
the ground floor.  Said we were to have shares cheaper,—for
less money.  I was to send him $1,000 for five contracts.  I
was to get them at $800 apiece by sending up my $1,000.
At this time, and at the time of executing the contracts, I
believed what Mr. Scott said to me.  I had known Mr. Scott
for some years, and had confidence in him."  The five con-
tracts referred to were taken, but at a later time in the same
year Scott told the defendant that the valuation of the prop-
erty had been increased fifty thousand dollars, and proposed
that he take five additional shares.  The defendant con-
sented to do so, and the five contracts were surrendered and

the ones in suit were entered into. Credit for two thousand five hundred dollars was given him on account of the increased valuation of the property. The larger part of what Scott said to the defendant to induce him to take the first five contracts was in the nature of expressions of opinion or purpose. The statement respecting the debt for which the land was held was substantially true. The only statement purporting to be of fact which is shown to have been false is that relating to the cost of the land. Would that statement have authorized the jury to find for the defendant? It was said in *Hemmer v. Cooper*, 8 Allen, 334, that "the representations of a vendor of real estate, to the vendee, as to the price he paid for it, are to be regarded in the same light as representations respecting its value. A purchaser ought not to rely upon them; for it is settled that even when they are false, and uttered with a view to deceive, they furnish no ground of action." That rule was followed in *Cooper v. Lovering*, 106 Mass. 77, and it is the rule of *Tuck v. Downing*, 76 Ill. 71, and *Banta v. Palmer*, 47 Ill. 99. In *Holbrook v. Connor*, 60 Me. 578, it was said: "The statement of the vendor that he paid a certain price for the land, if true, can be no more than an indication of his opinion of its value; and when we consider the various motives which may, and often do, actuate men in making their purchases, and especially when it is done for speculation, it is but the slightest proof of such opinion." As a general rule, a vendee has no right to·rely upon the statements of the vendor respecting the value of the property sold, but must act upon his own judgment, or seek information for himself. But to that rule there are exceptions. It was said in *Simar v. Canaday*, 53 N. Y. 306, that, where statements as to value are mere matters of opinion and belief, no liability is created by uttering them, but that such statements "may be, under certain circumstances, affirmations of fact. When known to the utterer to be untrue, if made with the intention of misleading the vendee, if he does rely upon them, and is

misled to his injury, they avoid the contract." The fraud which vitiates a contract must be material, affecting the very essence of the contract; but ordinarily, "if the fraud be such that, had it not been practiced, the contract would not have been made, then it is material to it." 2 Parsons Contract, 770. See, also, 2 Pomeroy Equity Jurisprudence, section 878, and notes. That rule was applied in *Smith v. Country-man*, 30 N. Y. 656, which was an action upon a contract for the sale of. hops. It was held that a false representation made by the vendee as to the price at which he had purchased hops of another person, which was relied upon by the vendor, and induced him to enter into the contract of sale, was material, and constituted a defense to an action on the contract. This rule appears to us to be in harmony with reason and the principles of justice. The price at which property actually sells in the open market is very satisfactory evidence of its value at the time of the sale. We cannot assent to the proposition that the statement of a vendor that he paid a specified price for the property he sells is a mere expression of opinion, upon which the purchaser has no right to rely. On the contrary, we think it is a statement of fact; and if the purchaser, without knowing or having reason to know what price was paid, relies upon the false statement, to his injury, he is entitled to relief. The cases of *Teachout v. Van Hoesen*, 76 Iowa, 113; *Iler v. Griswold*, 83 Iowa, 442, and *Coles v. Kennedy*, 81 Iowa, 360, although not precisely in point, tend to sustain our conclusion. See *French v. Ryan*, 104 Mich. 625 (62 N. W. Rep. 1016); *Moon v. McKinstry*, 107 Mich. 668 (65 N. W. Rep. 546), and *Woolen Co. v. Smalley*, 111 Mich. 321 (69 N. W. Rep. 722).

In this case no confidential relations existed between the defendant and Scott, but they had been acquainted with each other for several years; and, if the testimony of the defendant be true, Scott took advantage of their acquaintance and friendly relations, and the confidence which the defendant had in him, to accomplish the sale.

The land had been purchased but a short time before, and, if the defendant believed that the price paid for it was ninety-six thousand dollars, his belief would naturally have had great influence in causing him to make the purchase. Therefore, whether Scott made the statement respecting the price paid which is attributed to him, and, if he did, the probable weight it had in effecting the sale, were questions for the determination of the jury, and the court erred in directing a verdict for the plaintiff.

III.   It is insisted that the conveyance by the partnership to the corporation of the property in which the contracts purported to give the defendant an interest has made it impossible for the partnership to meet the requirements of the contracts; hence, that there is a failure of consideration. Each of the contracts provides that the trustee and his successors are to hold the land in trust for the benefit and use of all persons having a beneficial interest therein. The syndicate acquired the title impressed with that trust, and the contracts gave to the plaintiff notice of it. The defendant has not lost any right by the transfer, and the consideration of the contracts has not failed in consequence of it.

IV.   It is contended that the transfer of the property in question was in violation of the trust imposed by the contracts in suit, was without consideration, and is void. The contracts contemplated a possible change in the trusteeship; the plan of having title to the land conveyed to and by a trustee was adopted by the partnership as a convenient method of transacting its business; and the incorporation of the syndicate, and the transfer of the property to it, did not in any manner affect the rights of the defendant under his contracts. They provided that the trustee might execute conveyances of the property in behalf of his beneficiaries, on the order of the board of directors. We do not find that any provision of the contracts has been

violated by the transfers made, and the interests of the parties and objects sought to be accomplished furnished a sufficient consideration.

V. It is claimed that the plaintiff should not be permitted to maintain this action, for the reason that it is in the nature of an action for the specific performance of the contracts, and the plaintiff does not show that he is ready and able to perform what the contracts require of the trustee. The rights of the defendant were acquired subject to the incumbrance on the property in favor of the plaintiff. The contracts refer to that incumbrance. They require the defendant to pay his pro rata share of the cost of grading and improving the property to which they refer, and contain other provisions, but do not provide for a conveyance of the property contracted for, when the required payments shall have been made. The record fails to show any valid objection to the transfer of the contracts to the plaintiff, or to a recovery by him of the amount due thereon in this action. Much is said in argument in regard to the mutual, reciprocal, and dependent provisions of the contracts, and the right of the defendant to insist upon the performance of them; but the appellant has failed to call our attention to any requirement which should be performed by the plaintiff as a consideration precedent to his right to recover. What is said on that point is couched in vague and general terms. The contracts are in some respects peculiar and unusual, but we do not think their meaning and effect, so far as they are involved in this case, are doubtful. That the contracts were entered into is not denied, and there is no dispute in regard to the payments which have been made on them. For the error pointed out, the judgment of the district court is REVERSED.