YANELLI v. LITTLEJOHN.

1. TRIAL — STATEMENT OF PLAINTIFF'S ATTORNEY — OPENING — CONDUCT OF COUNSEL.

Where counsel in opening his case stated that plaintiff and his wife, who sued defendant for fraud and deceit in the sale of a farm, had saved up $300 from his earnings and from money the wife had earned by working in a factory, upon which the court interrupted, sustaining an objection of defendant's counsel, and ruled that the manner of earning it should be omitted, and did not make any difference, the action of the court corrected any possible prejudice from the statement.

2. EVIDENCE—VENDOR AND PURCHASER—FRAUD.

In an action for falsely representing that a farm sold to plaintiff was suitable for raising good crops of corn, wheat, etc., and was worth $15 per acre, testimony of plaintiff and his wife that he had to work elsewhere during the first winter, and they were forced to seek help from the neighbors

and from township officers, was competent in support of his contention that the farm was of poor quality, and not as represented.

3. SAME—TRIAL—CROSS-EXAMINATION.

Upon the cross-examination of defendant, who claimed that he had conveyed the farm in question to a third party from whom plaintiff bought, the court did not err in permitting plaintiff to show that defendant had advertised other similar land for sale at a lower price and had made false representations concerning quality, value, and state of title; the facts developed bore upon defendant's credibility and upon a general scheme to defraud that he may have been engaged in; nor would the testimony be inadmissible because fraud may be predicated upon a false statement regardless of the intent of the defendant or of his belief in the truth of the representations.

4. SAME—IMPROVEMENTS—VALUE.

Testimony of plaintiff that he became indebted for lumber and built a house with it on the farm could not be held to have misled the jury when defendant's witnesses testified to the value of the premises from a view thereof after the making of improvements.

5. SAME.

Evidence bearing upon the general value of similar land in the community where the property lay was not erroneously admitted, both parties having offered evidence relating to the general situation and surrounding property.

6. FRAUD—NEGLIGENCE OF INJURED PARTY.

No duty to use diligence in discovering a fraud is imposed on the injured party.

7. SAME.

That plaintiff disregarded his attorney's advice not to purchase the land, because it was not as valuable as defendant represented, was no defense, if plaintiff purchased in reliance upon defendant's false statements.

8. SAME—DAMAGES—MORTGAGES.

Plaintiff was properly allowed by the court to recover the difference between the actual value of the land and the value that it would have had if the farm had corresponded with defendant's representations, where the testimony had a tendency to show that he paid $300 for the property, gave a mortgage back for $300 more, on which he made certain payments, and which defendant treated as subsisting though

he claimed that plaintiff owed only $34 on it, by reason of an alleged deduction from and adjustment of the purchase price made by both parties.

Error to Allegan; Padgham, J. Submitted June 20, 1912. (Docket No. 67.) Decided October 1, 1912.

Case by Guiseppi Yanelli against Fred Littlejohn for fraud and deceit in the sale of real property. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles Thew*, for appellant.

*Clare E. Hoffman*, for appellee.

STONE, J. This is an action brought to recover damages which the plaintiff claims he has sustained in the purchase of 40 acres of land from the defendant, by reason of the alleged false and fraudulent representations made by the defendant relating to the quality and value of the land for farming purposes, which representations the plaintiff claims he relied upon. The plaintiff recovered a verdict and judgment for $534, and the defendant has brought the case here upon writ of error. There are 51 assignments of error. The appellant has not complied with Rule 40 of this court by making a clear and concise statement of the facts of the case distinct from argument, and we have found it unsafe to follow counsel in his alleged statement of facts, as it appears to be based largely upon defendant's testimony and theory. Counsel has also failed to comply with Rule 36, in that the pages of the record where exceptions may be found are not stated in the record, nor in the assignments of error. We have, however, with the aid of the briefs, been able, by much labor, to search out the errors relied upon. The court in its charge to the jury made a statement of the claims of the respective parties as furnished by them, from which we glean the following: That in the early spring of 1908 the plaintiff came to Allegan, and made arrangements with the defendant, or with one Pirro and defendant to-

gether, with reference to the purchase of the 40 acres of land in question. Plaintiff claims that defendant described this land to him, and represented that it was suitable for raising large crops of potatoes, corn, wheat, oats, rye, hay, and other farm crops, that it was a good quality of land, and was worth $15 per acre; that plaintiff is an Italian, had resided in Chicago, and was wholly ignorant of the value of land in this country, and that he relied upon what defendant and Pirro told him about the land. The plaintiff claims that Pirro was acting as the agent of the defendant; that some time after he had bought the land and obtained his deed he learned that Pirro claimed that he was buying the land of defendant and selling it to the plaintiff; that during the negotiations for the land he knew nothing about Pirro's dealing with defendant in any way, except that he was selling the land for the defendant. Plaintiff claims: That he came to Allegan county and looked over the land, but relied upon the recommendations which defendant and Pirro made as to the quality of the land; that he paid $300 before he got his deed, and that afterwards he paid to defendant in Chicago $83. Defendant and his wife gave plaintiff a warranty deed of the land on April 28, 1908, the consideration of which was $600. That he gave back to defendant a mortgage on the land for $300, payable $50 April 1, 1909, and $50 on or before April 1st of each year thereafter, until the amount was wholly paid with interest at 7 per cent. per annum. The $83 appears to have been paid to defendant on the mortgage in the spring of 1909. Plaintiff claims that in the deal he was defrauded; that he was deceived by defendant and his said agent in the condition and quality of the land; that the land is not fit for growing crops; and that a living could not be made by him on the farm. Plaintiff claims that the land is valueless for farming purposes, and claims damages by reason of the failure of the land to come up to the recommendations which were made by the defendant and his agent.

The defendant pleaded the general issue, and claims

that he did not sell the land; that he sold it to the man Pirro, and that the latter sold it to plaintiff, and that he, the defendant, had nothing to do with the sale; that he made no recommendation as to the quality of the land; that he never saw the plaintiff until he had been on the land, and until he came to defendant's office and paid the money and got his deed. Defendant further claims that he made an agreement with Pirro in the forepart of April, 1908, to sell him the south half of section 13 (which included this land), excepting the west 40 acres thereof, for $7 an acre, if he paid up on all of it, and $7.50 per acre if he paid up only part of it, and that he would deliver deeds to Pirro, or any one named by him, of parcels of not less than 20 acres, upon being paid thereon one-half the purchase price, and take back a mortgage for the balance; that about April 11th Pirro, with five Italians, including the plaintiff, came to Allegan; that Pirro took them out to look at the property, and that plaintiff saw the 40 in question; that in January prior to this visit Pirro had been shown the premises by defendant's agent; that while on the premises in April, the plaintiff and the other four selected parcels of land and paid to Pirro $20 apiece, taking a receipt for the same to apply on the purchase price agreed upon of $15 an acre; that they returned to Allegan and came into defendant's office and were introduced to him, but that no conversation was carried on between defendant and them; that next morning they returned to Chicago, and employed a lawyer there to come to Allegan and investigate the land and title; that the lawyer did so and reported to them that the land was poor, and that he could furnish them as good land for $5 an acre, and warned them to look out for Pirro, as he could not be trusted; that on May 2d the said five Italians (including the plaintiff) with four others, came to Allegan, and went out to the property and looked it over thoroughly; that at that time the plaintiff saw this 40, and on the low land thereof water was standing; that one of the Italians brought with him his brother-in-law, who declared that

the land was not worth $15 an acre, and induced him not to buy the land, and that this fact was then known to the plaintiff; that they returned to Allegan, and plaintiff and one Russo paid to Pirro $280 and $180, respectively, and that Pirro paid over the money to defendant, with enough added thereto to make a payment of $300 for plaintiff; that plaintiff and his wife had executed a mortgage in Chicago for the balance of the purchase price of $300, which was delivered to defendant; that two of the parties who had decided not to buy, returned to Chicago, and the others, with the plaintiff, returned to the land to help survey it; that on May 5th Russo came to Allegan, and obtained the deed to himself for his purchase, and a deed to the plaintiff for the 40 acres in question, and had them recorded, and a day or two thereafter the parties returned to Chicago; that two of the parties decided to purchase each a 40 acres, but were unable to raise the payment of $200, as required, and at the request of Pirro had promises from defendant to give them quitclaim deeds, until they or Pirro should pay on such first payment as much as $200 apiece, and accept a smaller payment to start with; that at the time plaintiff paid the money these two parties gave defendant a check for $560, which represented a payment of $300 for each; that defendant immediately banked this check, and, when Pirro came for the deeds on May 5th, the check had been protested and returned, and defendant called Pirro's attention to this fact, and he said that he expected to take care of that by the sale of enough parcels of land to enable him to protect the check for the parties, and to give them longer time and smaller payments, and that he expected to sell enough to others to do so. It is a fact that he failed to do so. It came to the knowledge of the plaintiff later that Pirro bought the land from the defendant for $7 to $7.50 per acre, and he brought pressure to bear on Pirro, who finally assigned his interest in the contract to defendant. It was further claimed by defendant that he had advanced Pirro, in expenses and cash, the sum of $199, and that

plaintiff and Russo had authorized defendant to settle with Pirro on the best terms obtainable, but not to exceed $50, and that defendant had done so before he had notice of, and before the assignment itself had been delivered to them; that plaintiff had paid to start with $300, and $83 afterwards, and figuring $7.50 an acre for 40 acres, and half of what difference had been paid Pirro on his contract, it left $34 for plaintiff to pay, upon which defendant agreed to cancel the mortgage, and on such terms it makes the purchase price of 40 acres $417. This balance of $34 is all that defendant claims he is entitled to hold on the mortgage against the forty.

There was testimony tending to support the claims of the respective parties, and there being a sharp conflict in the testimony, the questions of fact were for the jury to consider. We gather from the record that the plaintiff went into the occupancy of this land in the spring of 1909, and cleared and cultivated some of it, and in the year 1910 he built a house thereon, and has continued to live there since. It will be noted that the plaintiff does not seek to rescind the sale, but seeks to recover damages for the fraud which he claims the defendant was guilty of in the transaction.

In the discussion of the assignments of error appellant treats them as follows:

(1) Error calculated to prejudice defendant's case by arousing undue sympathy for the plaintiff.

(2) Error in cross-examination calculated to prejudice the jury against the defendant and some of his witnesses.

(3) Error in the admission of evidence calculated to mislead and confuse the jury.

(4) Error in the introduction and rejection of evidence bearing upon the value of the land, and matters affecting said land.

(5) Error in charge of the court.

*First.* Taking up the first point, appellant claims that the record discloses a persistent effort on the part of plaintiff's counsel to arouse prejudice of the jury against de-

fendant, and undue sympathy for the plaintiff. He, by the first assignment of error, complains because in his opening statement plaintiff's attorney was permitted to state over defendant's objection and exception that:

"Guiseppi Yanelli, a married man, his wife being with him, lived in Chicago, and these two people had something like $300 which they had saved from his earnings, and from the money his wife earned working in the factory."

Upon the objection being made, the court remarked that it did not make any difference, "Better leave it out," whereupon plaintiff's attorney said that he wanted to give the jury an idea of what the case was about, that they had $300 which they had saved at that time, and which they desired to invest in a farm. It was material to show that the plaintiff had and paid $300 on the purchase. How he had earned or obtained it was probably immaterial, but we do not consider the statement of sufficient importance to be discussed, and the remark of the court that "it didn't make any difference" probably set the matter at rest in the minds of the jurors.

The fourth, fifth, sixth, and seventh assignments of error complain because the court permitted the plaintiff and his wife to testify that plaintiff had to work elsewhere than on the farm the first winter, and that they were forced to seek help from the neighbors and from the township officers. Bearing in mind that the declaration alleges that the land had been sold to plaintiff as good farming land, and that it would grow the numerous crops stated, the plaintiff sought to show the extent of the labor and effort made to produce crops, that enough could not be raised to support the family, and the necessity of going elsewhere to work, and the fact that the family had to be assisted by others. We think that whether the plaintiff was able to live on the place, and the amount that could be produced there, were material questions, as well as the efforts made by the plaintiff and family in that direction. While some of the testimony here complained of was rather

remote and might have been properly excluded, we do not think that its reception constituted reversible error.

*Second.* The alleged errors in cross-examination complained of relate to the cross-examination of the defendant. It should be borne in mind that it was the claim of the plaintiff that the defendant and his alleged agent, Pirro, had conspired to cheat and defraud the plaintiff by deceit and false representations. It also appeared that the defendant was, and for some time had been, engaged quite extensively in the real estate business, and had advertised his business in the newspapers and by circulars. After testifying as to the value of the land in question, the defendant was cross-examined as follows:

"*Q.* Didn't you sell land of the same quality as this for a great deal less than $15 per acre?

"*A.* I don't know where.  *  *  *

"*Q.* November 16, 1905, didn't you insert these advertisements in one of the Chicago papers:

" 'To close out quick, I am offering a good forty-acre farm close to Allegan courthouse, on the main road, all nice and dry, level land, with perfect title, for only $300?'

"(Objected to as immaterial; objection overruled and exception.)

"*A.* I may have done so.  I don't say I didn't.

"*Q.* Did you offer this place for sale:

" 'Highly improved forty-acre farm on main road, telephone, daily mail. This is two miles to Allegan, county seat of Allegan county. The farm is of nice, smooth, level land, no blow-sand or swamp. About 18 acres cleared and no hillside cultivation, all good black soil. Balance second growth wood; a first-class log house, lath and plastered, a small stable, good, poultry house, apples and peaches in bearing. Owner is forced to sell; has cut price down to $600.00. $100.00 or more cash, balance to suit you. Will furnish abstract free, showing title to be perfect. Take advantage of the cheap New Year rates—round trip from Chicago to Allegan $6.00. Come and see the biggest bargain ever offered in Allegan?'

"(Objection for the same reason; overruled; exception.)

"*A.* I don't remember. I may have done so.  *  *  *

"*The Court:* Where is that with reference to this land?

"*Plaintiff's Attorney:* I am trying to find out.

"*A.* I don't know any such place.

"*Q.* Did you sometimes offer places in the paper you didn't have?

"*A.* I have done so; yes, sir.

"*Q.* Put in different descriptions of land you didn't have, and didn't know of?

"*A.* I have.

"*Q.* Is that a sort of drawing card?

"*A.* Simply to get a mailing list.

"*Q.* Then I understand it is your practice to insert in the papers these descriptions of land that don't exist?

"*A.* Not a practice. I have done it probably a half dozen times. (Motion by defendant's attorney to strike out as immaterial and irrelevant; overruled; exception.)

"*Q.* Sometimes you make false printed statements in newspapers as to quality of land, and descriptions of land, you haven't got for sale?

"*A.* You can take it any way you are a mind to.

"*Q.* I am asking you.

"*A.* I have done that—written those men and paid the paper the price, if I didn't have them for sale.

"*Q.* So the property described therein really never existed?

"*A.* It may have existed. I won't say it did or not.

"*Q.* It didn't cover anything you had for sale?

"*A.* No, sir. (Same objection; ruling and exception.)

"*Q.* You sometimes sent out circulars which falsely stated the amount a man could make on a certain parcel of land? (Objected to as immaterial and irrelevant.)

"*The Court:* No; it is charged in here, misrepresentations.

"*Defendant's Attorney:* There is no tie to link the two.

"*The Court:* I don't know about that. There is quite a latitude of cross-examination in cases of this kind. Go ahead. (Exception.)"

The foregoing is a fair sample of the testimony complained of.

Bearing in mind that this was the cross-examination of a defendant charged with deceit and false representations relating to the quality and character of land sold by him, we cannot say that there was an abuse of discretion or

error in permitting the cross-examination. Such examination bore upon the credibility of the witness, and it was relevant as tending to show that false representations may have been made as part of a general scheme to defaud, and that such representations were made intentionally or recklessly, and as bearing upon the fraudulent intent. *Beebe* v. *Knapp*, 28 Mich. 53; *Stubly* v. *Beachboard*, 68 Mich. 401 (36 N. W. 192); *French* v. *Ryan*, 104 Mich. 625 (62 N. W. 1016); *Shrimpton & Sons* v. *Rosenbaum*, 106 Mich. 68 (63 N. W. 1011); *Diel* v. *Kellogg*, 163 Mich. 162 (128 N. W. 420). Counsel for appellant argues that because, in this State, in order to constitute fraud, it is not necessary that the person making the statement should either know that it is untrue, or be recklessly and consciously ignorant whether it be true or untrue, but it is sufficient if the representation be false in fact, therefore that such evidence was immaterial and irrelevant. We cannot agree with this contention. The rule stated would not do away with the right to cross-examine a party as to his real intention. It might also affect his credibility as a witness, and tend to enlighten the jury as to "what manner of man he was."

*Third.* Alleged error in the admission of evidence calculated to mislead and confuse the jury. Complaint is here made that the plaintiff was allowed to show that he had built a house on the land, and had run in debt for the material. The record shows that the plaintiff had testified that defendant had promised to build a house at the expense of plaintiff. This was objected to by defendant as immaterial and irrelevant, whereupon plaintiff's attorney said that to clear the record he did not care anything about the testimony, and the court ordered it stricken out, and the following occurred:

"*Q.* The talk between Mr. Littlejohn and Yanelli, as to the house, I don't care anything about that. There was no house on this land, and you built a house?

"*A.* I built a house, bought the lumber at Hamilton.

"*Q.* How much?

"*Defendant's Attorney:* I object to going into this, as to the house.

"*The Court:* He may state that.

"*Defendant's Attorney* (continuing): On the ground that it is immaterial and irrelevant, and has no bearing on the case. Note an exception.

"*The Court:* Let it stand.

"*Q.* How much did you pay for the lumber to build the house?

"*Defendant's Attorney:* Same objection.

"*The Court:* He may state that.

"*A.* I didn't pay for it.

"*Defendant's Attorney:* I move to strike that out.

"*Q.* How much did you buy?

"*A.* One hundred and twenty-five dollars or $121.

"*The Court:* That don't seem to have anything to do with the case at all.

"*Plaintiff's Attorney:* Undoubtedly they will swear witnesses to prove the value of this property, and we wish to have the jury understand the improvements that have been made, and what the cost of them was.

"*The Court:* That would not be a proper question anyway. Strike out the balance about the house."

It is difficult to understand just what the court intended to strike out, whether all that had been testified to after the previous ruling, or only the latter part thereof. We do not think that it was error to permit the then condition of the premises to be shown, and who had made the improvements, especially in view of the evidence on behalf of defendant of numerous witnesses, who had examined the premises just before the trial. We do not think that the jury was misled by any evidence about the house, as the court plainly charged that the proper measure of damages would be the difference between the actual value of the land at the time of the purchase and what its value would have been had it been of the quality and condition represented. *Aldrich* v. *Scribner*, 154 Mich. 23 (117 N. W. 581, 18 L. R. A. [N. S.] 379); *Painter* v. *Lebanon Land Co.*, 164 Mich. 260 (127 N. W. 739, 130 N. W. 205). We do not think that there is any merit in this contention.

*Fourth.* Alleged error in the introduction and rejection of evidence bearing upon the value of said land, and matters affecting such.

We have carefully examined the record and the assignments of error relating to this subject, and we are of the opinion that the court did not err therein. Bearing in mind that the declaration alleges that the defendant had represented the land to be valuable, and suitable as farming land, and that it was sold for a home, upon which a living could be made by suitable treatment, it was proper to receive evidence, not only of climatic or frosty conditions there, but of other land similarly situated in the neighborhood; that whole sections of land in that vicinity (including the land in question) were so poor in quality that they had been abandoned for farming purposes. These questions were gone into by both parties, and in the introduction of evidence we do not think that the defendant was discriminated against by the court, as is claimed by appellant. *Jackson* v. *Armstrong*, 50 Mich. 65 (14 N. W. 702).

*Fifth.* Alleged error in the charge.

It is here claimed that the court failed to charge the jury properly on the question of diligence that the plaintiff should use before he would be authorized to rely on representations made by the defendant. Among other things, the defendant requested the court to charge the jury as follows:

"If you should find in this case that the plaintiff had employed an attorney to investigate this land, and report to him thereon, and that said attorney had reported to plaintiff, before he completed his purchase in this case, that said land was poor land, and as good land could be bought in this locality, to wit, Allegan county, for $5 per acre, and advised them not to buy the land, and warned them against the representations of Pirro, and you further find that Pirro was a stranger to them, and that defendant was a stranger to them, then I charge you that plaintiff would not be using reasonable diligence, under such circumstances, in relying upon the statements of either

Pirro or defendant in regard to the value, or productiveness of said land; if he went ahead under such circumstances and purchased the said land, he cannot base an action on such representations."

There was evidence tending to show the facts embraced in this request, but we do not think that appellant was entitled to have the request given. It was a question for the jury to determine whether or not, under the circumstances, the plaintiff had exercised reasonable diligence. The court did charge as follows:

"I charge you that it is an essential element in a case of this nature, and it is necessary for the plaintiff to show, that he not only relied upon the statements made to him, if you find such statements were made, as alleged in his declaration, but that in so relying he was using reasonable diligence, under the circumstances in this case; and, if you do not so find, your verdict must be for the defendant."

We think that defendant has no cause to complain of this branch of the charge. Bearing in mind the quality of the facts and the character of the inquiry, it was certainly not a question of law that the truth was discoverable by the plaintiff in any particular way. *Jackson* v. *Armstrong, supra; Swimm* v. *Bush,* 23 Mich. 99; *Starkweather* v. *Benjamin,* 32 Mich. 305; *Holcomb* v. *Noble,* 69 Mich. 396 (37 N. W. 497); *Smith* v. *McDonald,* 139 Mich. 225 (102 N. W. 738); *Smith* v. *Werkheiser,* 152 Mich. 177 (115 N. W. 964, 15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406).

A defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud. *Lewis* v. *Jacobs,* 153 Mich. 664 (117 N. W. 325). It appears that plaintiff did not rely upon the advice and statements of Barassa, the attorney, but acted in disregard of such advice. Had his attorney advised him to purchase the land, and had he relied upon such advice, then the defendant would not have been liable: but the fact that Barassa advised him not to purchase, and that he did

not follow the advice, might be urged as evidence of the strength of the representations claimed to have been made by the defendant. The question is not, Was he warned? but Was he deceived and defrauded by the defendant?

Although defendant made no motion for a new trial, he claims that the verdict was excessive, and that the court erred in submitting the subject of the measure of damages to the jury in the following part of the charge:

"The question here for you to decide is simply this: Did Mr. Littlejohn make the representations that the plaintiff claims were made to him, about the farm, about its value, about what it would grow, what it was worth for farming purposes? Did he make those representations to the plaintiff, before he bought the land, at any time before he bought the land? Did plaintiff believe and rely upon those representations, and pay his money upon those representations, and take the land? Were those representations fraudulent and calculated to deceive the plaintiff? Has the plaintiff been deceived in relying on those representations and paying his money? He has got his deed and given a mortgage back. He paid $300 cash and gave a mortgage for $300 more—that is, $600 that he has got in it. The mortgage in this case stands good against the land. There is a $300 mortgage, with no indorsements of payment, on the land. So we might assume that the mortgage still exists on that land. I say, if those representations were made, and he believed them, and they were calculated to deceive and did deceive him, as to the value of it, and the plaintiff has been defrauded by it, and damaged by it, then he is entitled to receive, as I told you, the difference between what the proof shows to you is the actual value of the land and what it would have been if it had been as represented, as the plaintiff has claimed."

The position of the defendant relating to the mortgage was rather equivocal. It is true that he stated that the plaintiff would have to pay him $34. It also appeared that the $83 paid in February, 1909, had never been indorsed on notes or the mortgage. Most of the amount secured by the mortgage was yet to become due, when defendant testified in the fall of 1911, and defendant

could assign to an innocent purchaser. On his cross-examination he testified as follows:

"The plaintiff has paid me on this land $383. I gave him a receipt for it. I still hold his notes and mortgage for $300. The notes were for $50 each. He don't owe me anything now. I offered him his deed through Lemoine. The mortgage has not been discharged nor notes canceled. I don't think I could collect them until they became due. I guess I could foreclose. I never foreclosed a mortgage, and am not familiar with it."

Defendant nowhere offered to surrender the notes and mortgage, or declare them paid. We are not satisfied that the court erred in treating the notes and mortgage as a subsisting claim against the plaintiff, and against the land.

Such being the situation, there was evidence, which, if believed by the jury, was sufficient to support the verdict. We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred.