HOUDER v. REYNOLDS.

1. VENDOR AND PURCHASER—CONTRACTS — FRAUD — GOOD FAITH — RIGHT TO RESCIND.

In an action for damages for false and fraudulent representations in the sale of lands, where essential facts asserted and relied upon were untrue, the good faith of defendant and her agent in making them was no defense.

2. SAME—RESCISSION—DAMAGES—EVIDENCE—INSTRUCTIONS—ISSUE —CURING ERROR.

The sale having been rescinded, error in admitting testimony as to the value of the land was harmless, where the court in his instructions confined the jury to the proper issue, instructed them not to weigh the erroneous evidence, and the verdict returned was for actual damages only.

Error to Newaygo; Barton, J. Submitted January 16, 1917. (Docket No. 169.) Decided March 29, 1917.

Assumpsit by Ira D. Houder and another against Rose E. Reynolds for fraud and deceit. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Cross, Vanderwerp, Foote & Ross,* for appellant.

*Butler & Everett,* for appellees.

OSTRANDER, J.    Plaintiffs rescinded a contract for the purchase and sale of real estate, which defendant by her agents had made with them, sued for their damages, and a verdict was returned and judgment entered in their favor. Defendant moved for an order setting aside the verdict and granting a new trial. It was refused. It is contended in this court that it was error to overrule defendant's motion for a directed verdict in her favor, and, consequently, error to refuse a new trial; that error was committed in instructing the jury and in admitting certain evidence.

The contract was made January 25, 1915. The land was 80 acres of a large tract owned by defendant in Newaygo county, and plaintiffs, residents of the State of Illinois and seeking a new home, were attracted to the land by an advertisement published in the "Farmer's Review," in which it was stated, among other things, that the soil was clay and sandy loam, would produce any crop, and was not sandy or rough. What appears to have been an attractive offer, contained in the advertisement, was the one that the owner would take pay in one-half the crops "raised this year, or little down each year." Plaintiffs, unacquainted with the soil of Michigan lands, went to the land in the winter, the ground being covered with snow, saw the "lay" of the land, but not the soil, made their contract January 25, 1915, returned to Illinois, shipped their goods and farm implements to the land, erected a house and other buildings, and, when the weather per-

mitted, set about clearing, and in some fashion cleared, from 25 to 30 acres of the land and planted it. The land produced no crop. Plaintiffs' testimony tended to prove that in the large tract of land is some fairly good and fertile land, but that the piece purchased by them is sand, upon which no crop, unless grass can be grown, can be produced. The issue of fact, submitted to the jury, was whether the land was what it was represented to be, suitable for diversified farming as carried on in Northern Michigan; if it was, "it filled the terms of the contract in that regard, and there should be no recovery."

Defendant's agent represented to plaintiffs that the land selected was a good farm, as good as any land in Michigan, was a sandy clay loam and clay subsoil, was all right for farming, and the piece selected was, in the agent's estimation, the best piece on the ranch. The case made by the evidence presented an issue for the jury. In the printed advertisement, and in the agent's statements, facts were asserted. It is probable, all of the testimony being considered, that defendant and her agents intended to commit no fraud, to practice no deceit; but, if the essential facts asserted and relied upon were untrue, plaintiffs' action is not defeated by the good faith of those who asserted them. Only actual damages—actual outlay upon the farm—were recovered, and about the rule of damages stated by the trial court, no complaint is made.

It is said in argument, by defendant, that the land would, or might, be valuable for a fruit farm, and that it does not appear what crops are produced by *diversified farming in Northern Michigan.* It appears that plaintiffs planted what their neighbors planted. Defendant represented that the land would produce any crop. The court, in instructing the jury, said, among other things:

"I further charge you that if you find from the

evidence in this case that the defendant made false statements of the quality of the property in question to the plaintiffs, and that they were ignorant of the quality of the property under the circumstances indicated, and trusted that such statements were to be relied upon and that plaintiff had no opportunity to examine the soil, the defendant is guilty of fraud, and plaintiffs should recover."

When read with the remainder of the charge, this excerpt therefrom is but a statement of a rule to which I have already referred. The jury was confined to the real issue.

Testimony was admitted, over objection, of the value of the land per acre for farming purposes at the time it was sold to the plaintiffs. Plaintiffs had agreed to pay $22.50 per acre for the land. Defendant's advertisement, which has been referred to, stated:

"I have a very fine tract of land in Newaygo county, Michigan, that I will divide in farms to suit at $22.50 per acre."

The testimony for plaintiffs was that defendant's agent represented that the land—

"all around there sold for $22 to $25 an acre. Nothing further was said in regard to the value of this land."

Plaintiffs produced witnesses who, from a claimed knowledge of the soil, what the plaintiffs had done upon the land, and the results of what they had done, expressed the opinion that, when plaintiffs bought it, its value was not more than $5 per acre. In the brief for plaintiffs, it is said:

"The only purpose for which this testimony was offered was to show that the land was not worth $22.50 an acre, as represented by the defendant's agents, Mr. Reynolds and Mr. Cain, and to show that its value as farming land had been falsely represented."

I do not find that defendant's agents expressly directly represented that the land was worth any sum

per acre. Indirectly, in fixing a price for it, and in stating the selling price of land around there, it was represented that the price asked was a fair, at least not an unfair, price. Whatever was indirectly represented concerning the value of the land, tended, of course, to confirm and support the representation that the land was suitable for farms. But, the sale having been rescinded, the value of the land was not in issue, and so the court instructed the jury, telling them not to weigh the testimony concerning the value of the land, whether it was worth much or little.

The effect of the testimony objected to was that, in the opinion of the witnesses giving it, the land, when it was sold to plaintiffs, was of no value for general farming purposes. It would have been proper to receive the opinion of a witness that the land had no value for a farm—was worthless for farming purposes. In view of the precise issue, the instruction of the court, and the verdict returned, it cannot be doubted that the jury regarded the testimony as having this, and no other, probative value. Nor is there reason to doubt that without the particular opinions the jury would have reached the conclusion it did reach.

The judgment is affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.