HILLIER *v.* CARPENTER.

1. FRAUD — EXCHANGE OF PROPERTY — FALSE REPRESENTATIONS — GOOD FAITH—REFORMATION OF INSTRUMENTS.
   On a bill to reform a contract for an exchange of real property on the ground of fraud, if the representations were actually made and were false it is unnecessary to determine whether they were made in good faith.

2. SAME—NEGLIGENCE OF INJURED PARTY.
   No duty to discover the fraud is imposed upon the injured party.

3. SAME—REPRESENTATIONS AS TO VALUE—RIGHT TO RELY THEREON.
   Where plaintiff had no knowledge as to the value of the property he was to receive, he had a right to rely on the representations of defendant in regard thereto.

4. SAME—APPROPRIATE RELIEF—AMENDED PLEADINGS—RESCISSION.
   Where the record contains propositions of settlement from counsel for both parties based upon a rescission of the contract, in view of these offers and the opinion of this court that plaintiff was defrauded and that rescission is the appropriate relief, the pleadings will be amended and rescission decreed in lieu of the relief granted plaintiff by the court below.

For authorities discussing the general rule as to right to rely upon representations made to effect contract as a basis for a charge of fraud, see note in 37 L. R. A. 593.

Appeal from Genesee; Brennan, J. Submitted April 15, 1919. (Docket No. 37). Decided July 17, 1919. Rehearing denied October 6, 1919.

Bill by Perry E. Hillier and another against Edbert M. Carpenter and another to reform a contract for an exchange of real estate on the ground of misrepresentation and fraud. From a decree for plaintiffs, defendants appeal. Modified, and affirmed.

*Farley & Selby* and *George W. Cook*, for plaintiffs.

*Brownell & McBride* and *Charles A. Withey*, for defendants.

BIRD, C. J. Prior to March 12, 1918, plaintiff was a farmer and resided within a few miles of the city of Flint. Defendant was a real estate dealer and resided in Flint. They were acquainted. They met on the street on the 12th day of March, 1918, and fell to talking about their respective properties, and they had some talk about exchanging them. Later they talked more about it. On March 12th they arrived at an agreement and plaintiff conveyed his 248-acre farm near Flint, together with a herd of Holstein cattle and other personal farm property, subject to certain mortgage indebtedness thereon, in exchange for a conveyance of defendant's six-family flat in Flint, and in addition to the farm and personal property plaintiff gave defendant a mortgage on the flat for $35,000. A mortgage of $5,000 on the flat was to be paid by defendant. On March 16th the conveyances were delivered and each took charge of the property traded for. Soon after the deal was consummated the plaintiff began to think he had been deceived and defrauded. On April 1, 1918, he filed his bill charging defendant with fraud and deception in connection with the following representations:

(a) That the flat property was worth $75,000, and

that it would readily sell in the market for more than $67,000.

(*b*) That the net yearly rentals from said flat property were $4,200 and upwards.

(*c*) That the total annual expense connected with said property would not exceed $550 to $600.

(*d*) That all the apartments except the one in the basement were then rented for $65 per month, and that the seven garages on the premises were all rented at $5 per month each.

(*e*) That the barn on said premises could, at an expense of not exceeding $1,000, be made into living apartments, and that the total rental of all the apartments could then be made to yield upwards of $500 per month.

(*f*) That the only incumbrance on said property was a mortgage of $5,000.

The relief prayed for was:

(1) That the $35,000-note and mortgage be declared invalid and that they be canceled and surrendered to plaintiffs.

(2) That defendants be enjoined from recording the said mortgage and from taking any proceedings in law or equity to enforce either the note or mortgage.

(3) That defendants be ordered to pay the mortgage indebtedness of $15,000 on the flats, and that a lien for that amount be declared on the farm until the same is released.

(4) That plaintiffs be decreed their damages on account of the fraud.

(5) A general prayer for relief.

Defendants filed an answer taking issue with plaintiffs as to the truth of some of the representations and denying that others were made. The matters in issue went to a hearing and a large amount of testimony was taken bearing on the value of the respective properties and on the other issues in the case. The chancellor reached the conclusion that defendant Carpenter made the representations substantially as alleged and that the representations concerning the market value of the flats and the annual net income therefrom were

exaggerated and untrue. He also found that plaintiff relied upon such representations and that they were the inducing cause for making the exchange of the properties. He found the value of the farm and personal property, which plaintiff turned over to defendant, less the mortgages thereon, to be $32,000. He found the value of the flats to be $32,000. He ordered that the $35,000 mortgage be canceled and surrendered to plaintiff, and in addition gave to plaintiff a lien on the farm until the mortgages on the flats, aggregating $15,000, should be released.

It would be difficult for one to read the record in this case without reaching the same conclusion that the chancellor did, namely, that the representations were all made as alleged, and that the representations with reference to the market value and the net income of the flats were exaggerated and untrue. The market value and the net income were greatly overstated. After taking into consideration the fact that the average man ordinarily has an exaggerated notion of the value of property which he owns and after making due allowance for real estate optimism and errors of judgment, the market price stated by defendant would then be so far out of the range of its real or market value that it is difficult to believe the statements were made in good faith. But if they were actually made and were false it is unnecessary to determine whether they were made in good faith. *Yanelli* v. *Littlejohn,* 172 Mich. 91; *Houder* v. *Reynolds,* 195 Mich. 256. The reckless mood that defendant was in when making these representations is further illustrated by his statement that the mortgage indebtedness on the flats was $5,000, whereas in fact it was $15,000.

Although plaintiff owed no duty to defendant to discover the fraud (*Yanelli* v. *Littlejohn, supra*) it does seem, as counsel suggests, that plaintiff ought to have discovered the reckless character of these statements in the interim between March 12th and 16th.

Had he advised with one or two of the real estate men, who subsequently testified in his behalf, he would undoubtedly have had an awakening. Of course, if plaintiff did not know the value of the flats he had a right to rely upon the representations made by defendant, and we are forced to the conclusion that he did not know and that he did rely on the representations, because in no other way could one account for his making a trade which amounted to little less than donating his farm to the defendant.

It will be of no advantage to any one to go further into a discussion of the fraudulent representations. We are in accord with the decree down to the point where the relief is granted. We are all of the opinion that a decree of rescission, which would place the parties back in the ownership and possession of their respective properties, would be the more appropriate relief under all the circumstances of the case.

During the hearing counsel for the parties discussed in open court the question of an amicable settlement of their differences. This talk resulted in both counsel making propositions of settlement and reading them into the record. Both offers appear to be based upon a rescission of the contract. In view of these offers and the opinion of this court that rescission is the fitting relief, the pleadings will be amended and a rescission decreed. With this modification the decree will be affirmed. The record will then be remitted to the trial court where further testimony will be taken, if the parties are unable to agree, in order to determine what the net income of each property has been since the date of the exchange. Should a balance be found in favor of either party, it will be made a lien, until paid, on the property of the other party. Plaintiffs will recover costs of both courts.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.