HILLIER v. CARPENTER.

1. APPEAL AND ERROR—ACCOUNTING—EVIDENCE—WEIGHT OF EVI-
    DENCE—PREJUDICE—CREDIBILITY OF WITNESS.
        In accounting proceedings rendered necessary by the fraud
        of defendants in an exchange of properties, an objection
        that the chancellor was prejudiced against one of the de-
        fendants and ignored his testimony is without merit, where
        it appears that because of defendant's untruthfulness in

previous testimony the chancellor expressed himself as unwilling to accept his testimony, but it does not appear that his views in that regard unduly affected his judgment in weighing the testimony and determining the questions before him for solution.

2. SAME—COMPUTATION BY ACCOUNTANT.

A computation by an accountant, submitted to the court in defendant's brief based on the testimony, giving full credit to defendant's testimony, which was much overdrawn in his own behalf, thus materially affecting the average, *held*, under the circumstances, to be of little value to the court.

3. SAME — ACCOUNTING — AVERAGE JUSTICE SUFFICIENT WHERE MATHEMATICAL CERTAINTY IMPOSSIBLE.

Where the questions of accounting were difficult, and could not be determined with mathematical certainty, and the chancellor has succeeded in working out a rough average justice between the parties, his determination will not be disturbed, on appeal, even if, by error of judgment, some of the values fixed against the defendants are too high.

Appeal from Genesee; Brennan (Fred W.), J. Submitted June 15, 1921. (Docket No. 49.) Decided July 19, 1921.

Bill by Perry E. Hillier and another against Edbert M. Carpenter and another to reform a contract for an exchange of real estate on the ground of misrepresentation and fraud. On appeal to the Supreme Court, the decree was modified so as to rescind the contract, and the case was remanded for an accounting. From a decree for plaintiffs, defendants appeal. Affirmed.

*Farley & Selby* and *George W. Cook*, for plaintiffs.

*Homer J. McBride* and *Charles A. Withey*, for defendants.

BIRD, J. At its inception the purpose of this chan-

cery suit was the reformation of a contract to exchange real property on the ground of fraud. It was claimed by plaintiffs that they had been induced to exchange their farm, tools and live stock for an apartment building in the city of Flint by false and fraudulent representations. At the hearing the chancellor found that defendant Edbert M. Carpenter made the fraudulent representations as alleged and assessed plaintiffs' damages on account thereof. The case then came to this court. We agreed with the chancellor as to his findings on the question of false representations, but disagreed with him upon the question of relief. It was the conclusion of this court, for reasons set out in the opinion, 206 Mich 594, that plaintiffs' relief should be by rescission of the contract. This conclusion made it necessary to have an accounting as the parties had already been in possession of each other's property for some time. By reason of this the record was remanded to the trial court with instruction to take testimony and make findings on certain questions, submitted in the opinion, in order to reach an equitable adjustment between the parties. This has been done and the case is here again on complaint of defendants that the conclusions reached by the chancellor on the several items of accounting are unjust and inequitable. The conclusions reached on the questions submitted are:

"1. * * * Now, in so far as the expenditures made upon the cow barn on the farm are concerned, the court finds that such expenditures have enhanced the value of the farm by reason thereof, and that such increased valuation the court determines to be $600.

"That the value of the new buildings or house erected on the farm by the defendants is only valuable to the extent of the lumber that might be salvaged that entered in its construction, which I find to be the sum of $250. That the fences constructed upon the farm during the possession of defendants increased the

value of the farm to the extent of the cost thereof, which under the proofs I find to be $261.90. And under the proofs it appears that there are eight acres of wheat more on the ground at the present time than when the farm came into possession of defendants, and that the value of said eight acres of wheat is $88. Therefore, the court finds that the defendants are entitled to a credit as improvements or increase in value of the farm during the time they have had possession of the same, and that exclusive of the increase or decrease in valuation caused by fluctuation in market values, of the sum of $1,199.90.

"2. Upon the second proposition the court finds that the fair rental value of the farm during the time it has been in possession of the defendants, as appears from the testimony of witnesses who impress the court from their appearance and manner of giving their testimony, and knowledge of the farm and its surroundings, to be $10 per acre annually, or a total for an annual rental of the farm for two years of $4,960.

"3. The court finds under the third proposition that the rental value of the flat for two years is $4,980; that the amount of the rent collected for the month of April, 1920, is, to wit, $400. Deducting therefrom the cost of janitor service and the overhead expenses in caring for the flat as shown by the testimony for a period of 15 days, would leave a balance of $300, for which the defendants should have an additional credit, or a total of $5,280.

"4. The court finds from the testimony which in his judgment is entitled to consideration, that the value of the apartment house with the addition of the porch constructed by the plaintiffs, is of the same value as when received by plaintiffs at the time of the exchange, that is to say, the cost of the porch constructed by plaintiffs will be offset by any depreciation in the value of the premises through the act or neglect of plaintiffs.

"5. The value of the personal property as fixed by the original decree was $12,000, and the Supreme Court having affirmed that finding of fact, it must be accepted and is accepted in this computation as fixing the value at the time the property was turned over to the defendants. The determination of the difference in value of the property now in posses-

sion of the defendants on the farm, to be turned over to plaintiffs under this decree, and the personal property as originally received by them is fraught with many difficulties. I have assumed that unless it otherwise appears to the contrary, that the property now in possession of defendants is the same property as received by them originally. Five cows were sold at one time by defendants for $1,405, which the court finds to be a fair valuation of the cattle when sold, and a charge therefor is made against the defendants for that amount. A pony was turned over to the defendants and was sold for $60, which the court finds to be the fair and reasonable value of the same—$60. Horses, tools and cows placed upon other farms and sold by the defendants with the farms the court finds to be of the value of $800. It also appears that a colt was lost during the time that the defendants had possession of the personal property, and the court finds the value of the colt to be $100. One hundred bushels of potatoes at $3.25 a bushel—$325—is a proper charge against defendants, as no potatoes, according to the testimony, are left on the farm. Two hundred bushels of oats are short of the amount left on the farm when defendants took possession, at $1 a bushel, $200. Ten tons of hay short of the hay that was left on the farm, $25 a ton, $250. One hundred bushels of barley at $2 a bushel—$200—there being no barley left on the place at this time. Two hundred forty-seven cords of wood at $4 a cord—$988. Nine geese, $3 apiece—$27. Twenty hens at $1 each—$20. Making a total in the decreased value of the personal property now in the hands of the defendants to be turned over to the plaintiffs of $4,385. Now, from the amount of last mentioned there must be a deduction made of value of 22 head of cattle which was left on the farm by the defendants over and above the depleted original herd, the value of which the court finds to be $550. Also a team of horses—$300. Making a total of $850 to be deducted; leaving the difference in the value of the personal property delivered to the defendants and the personal property to be turned over to the plaintiffs, and for which the plaintiffs are entitled to a credit

and a charge in their favor against the defendants of $3,535.

"Now, under the decree of the Supreme Court it is necessary to determine the fair rental value of the personal property during the time it has been in the possession of the defendants on the farm, and so far as the experience of witnesses who testified in the case and from the court's knowledge and observation, this is the most difficult matter to be determined, as the rental of the personal property under circumstances such as exist in this case is almost unheard of.    The court finds under all the proofs, however, that the rental value of the cattle for the first year was $400, the second year $1,000—$1,400.    The rent of the farm tools for two years—$300.    To rent of horses, 3 teams, $300.    A total of $2,000.    Now, giving the plaintiffs credit for the several amounts that they are entitled to charge against the defendants, including costs of suit due defendants under the decree amounting to $155, I find the amount to be $10,340.

"6. The court finds and determines that there is a balance on this accounting in favor of the plaintiff to the amount of $3,860.10, for which the said plaintiffs shall have a lien upon the flat property, so-called, in the city of Flint, Michigan, the property of the defendants.

"7. The matter of the costs in the circuit court and the Supreme Court as fixed by the decree have already entered into this computation.

"8. The court fixes the date for the execution of the conveyances provided for in the decree as the 15th day of April, 1920."

1. Defendants' counsel make strenuous objections to the chancellor's findings on certain items of the account as being much too high, and they take the position that the chancellor was prejudiced against defendant Edbert Carpenter, and that in some instances he gave full weight to the testimony of plaintiffs' witnesses and ignored the testimony of defendants and their witnesses, notwithstanding the fact that on some items defendants' witnesses outnumbered plaintiffs' and were better qualified to speak.    The

chancellor did express himself as unwilling to accept the testimony of defendant Edbert Carpenter, because he considered it unreliable.  He had heard Carpenter testify at both hearings and it had developed that certain statements testified to by him had turned out to be untrue, and others greatly exaggerated, and that his confidence had been so shaken in his truthfulness and probity that his testimony was not at all helpful in determining the issues.  While the chancellor was very frank as to the testimony of Mr. Carpenter we are unable to see that his views in that regard have unduly affected his judgment in weighing the testimony and determining the questions before him for solution.

2. Counsel do not argue specific objections to the findings, but have contented themselves with turning over the testimony taken at the accounting to an accountant who has segregated the testimony bearing on the value of the several items and from a total of the values, fixed by the several witnesses on each item, the general average is taken.  This accounting is submitted to the court in defendants' brief.  This, of course, is not testimony, and for that matter it need not be, as it is computations based upon the testimony.  The method pursued has some things to commend it.  The great objection to it, however, is that defendant Carpenter's testimony, which is included in the general average, is so overdrawn in his own behalf that it materially affects the average.  Had the accountant followed this method after the testimony of the parties had been eliminated, what he has given us would have been of much greater value and probably would not have been very far from what the chancellor has determined it to be.  As submitted it is not of much value.

3. The first reading of the findings of the chancellor gave us the impression that some items are placed

too high, for example: The rental value of the farm. This is placed at $10 an acre, the proofs showing that the market value of the land was $125 an acre. But after we went over the testimony and in connection with it considered the fact that the years 1918 and 1919 were not normal years so far as prices were concerned, but were abnormal years on account of the effects of the war, we are led to the belief that the conclusions reached by the chancellor are not open to the criticisms which the defendants make. The questions of accounting with which the chancellor was confronted in this case was a difficult task. No one charged with this duty could have determined them with mathematical certainty. An approximation was all that could be hoped for. We think the chancellor has done this and has succeeded in working out a rough average justice between the parties. If, by error of judgment, some of the values fixed by the chancellor against the defendants are too high, the defendants have the satisfaction of knowing it was the fraudulent representations of Edbert Carpenter which led them into a controversy which made an accounting necessary.

The decree of the trial court is affirmed, with costs of this court to the plaintiffs. No costs will be allowed to either party on the accounting in the trial court.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.