GUGEL v. NEITZEL.

1. FRAUD—WHEN FALSE REPRESENTATIONS AS TO VALUE ACTIONABLE.
   Although, generally, statement of value of property is mere expression of opinion and may not be made basis of action for fraud, where false representation of value is intentionally made to person ignorant of value, with purpose that such statement is to be relied upon, representation is in nature of statement of fact and will support action for fraud.

On right to rely on representation as to value of real property, see annotation in 37 L. R. A. 605.

2. SAME.

That defrauded party may have seen property before purchasing does not prevent representation of value from being fraudulent.

3. SAME—DEFENDANTS CO-OPERATING TOGETHER RESPONSIBLE.

Where defendant real estate dealers were co-operating in transaction involving exchange of property, and were together when false representations as to value were intentionally made, both are responsible.

4. SAME—INTENTIONAL FRAUD.

In suit for damages for fraud in exchange of property, rescission having become impossible, record *held*, to disclose case of intentional fraud by two defendants in representing value of property, entitling plaintiffs to relief against them.

Appeal from Wayne; McPeek (Russell R.), J., presiding. Submitted June 11, 1929. (Docket No. 120, Calendar No. 34,319.) Decided October 7, 1929.

Bill by William L. Gugel and another against Charles F. and Emma M. Neitzel, and others to rescind an exchange of real estate on the ground of fraud. From a decree dismissing bill, plaintiffs appeal. Affirmed in part, and reversed in part.

*Edward N. Barnard,* for plaintiffs.

*Earl Lovejoy,* for defendant Charles F. Neitzel.

*Charles F. Carney,* for defendant Jacob C. Golner.

*Lungerhausen, Weeks, Lungerhausen & Neale,* for defendants Robert J. Stewart and Omar P. Stelle.

FEAD, J. This is a bill to rescind an exchange of real estate between plaintiffs and defendant Neitzel upon the ground of fraud, consisting of misrepresentations of value. Rescission having become impossible, plaintiffs now ask money damages from de-

fendants Neitzel and Golner only. The circuit court entered a decree dismissing the bill. We find ourselves unable to agree with that result, as we think the record discloses a case of intentional fraud.

Plaintiffs are laboring folks without business experience except that, for a year, they had once conducted a small confectionery store, and, within five years, through brokers known to them, had had four or five real estate transactions which apparently had been profitable and had culminated in their owning a subcontract equity in a 10-family apartment on Richton avenue in the city of Detroit. Defendants Golner and Neitzel had been dealing in real estate, as their occupations, for several years.

On the morning of July 14, 1926, Golner and Neitzel approached Mrs. Gugel and proposed a trade of a 65-foot business lot on Fenkell avenue, on which was a building of little value, for plaintiffs' apartment. They represented the value of the lot at $500 per front foot, or $32,500. They took her to it and she looked it over a few minutes. On her expressing surprise and doubt of the price, they emphatically assured her it was not too high. Golner also assured her that, as she was to pay him a commission, he was looking after her interests. They made her a definite proposition which she would not accept without consulting her husband. They went away and returned about 5 o'clock, when Gugel came home from work, again discussed the deal, defendants again represented the value at $500 per foot and a preliminary agreement was executed, which provided for abstracts to be furnished and execution of final papers after titles were approved. However, defendants came back about 8 o'clock the same evening, stayed until 11, and, during that time, final instruments of transfer were executed and delivered, with-

out exchange of abstracts. Mr. Gugel had not seen the Fenkell avenue lots.

Plaintiffs assigned to Neitzel their subcontract. Neitzel gave them a warranty deed of the Fenkell avenue property, but took back from them a land contract covering it, in which he agreed to pay them $13,089.18, which represented the initial cost to them of their equity in the apartment with a profit of about $1,500, payments to be made at the rate of $125 per month, the whole amount to be paid within 18 months, and Neitzel also assumed mortgages of $16,100 already on the premises. Plaintiffs' explanation of this arrangement was that they refused to trade for property, wanted cash, and the deed and contract were intended as security for the purchase price of their apartment. Defendants claim it was a trade of real estate. Neitzel asserted to plaintiffs that the property was so valuable he wanted to keep it and insisted on the contract back. Whether a trade or as security, the form of the transaction is significant in view of later developments. The sum of $1,500 was added to plaintiffs' price for the apartment, which was to be a commission to Golner from plaintiffs. The testimony is not entirely clear as to how the commission was to be adjusted, but finally it was decided that Neitzel should pay Golner directly.

The highest estimate of value put upon the Fenkell avenue property by plaintiffs' experts was $275 per front foot, or $17,875. Defendants' only expert said it was worth $350 per foot, or $22,750. No one testified to a higher value except Golner and Neitzel. The land was assessed separately at $10,040 and two wooden buildings at $2,300.

While the form of the transaction, which obviously was intended to make the representations persuasive,

and the inability of defendants to produce a disinterested realtor to support their statements of value are of considerable weight, it is particularly through the sidelights and subsequent events that initial and continuing intentional fraud is made evident.

Golner's office for some time had been a sort of rendezvous for Neitzel, defendants Atlas and Peoples, C. E. Smith, G. S. Whaler, and John Cooper, all of whom dealt more or less in real estate and had been interested with each other in other deals.

Golner had owned the Fenkell avenue property, apparently purchasing on June 16, 1926, as he gave a mortgage on it to the former owner on that date. Afterward, date not shown, he conveyed to Atlas, with whom he was engaged in a deal involving this and other property. Atlas conveyed to Neitzel, date undisclosed. The consideration was the exchange of 20 lots in a Toledo, Ohio, subdivision in which Golner was interested. Neitzel said the lots were worth $1,100 each, making the purchase price $22,000. This was within a month before the trade with plaintiffs. Defendants offered no explanation of the increase in value to $32,500 in such a short time, nor where and when Neitzel obtained the lots.

Three days after the trade with plaintiffs, Neitzel assigned the Richton avenue contract to C. E. Smith for 130 acres of cut-over land in Antrim county, incumbered by contract or mortgage of $1,800, the equity being said to be worth $800, although Neitzel has not been able to sell for that amount. Why he sacrificed a $13,000 property for $800 was not explained. C. McBrayne, who had another subcontract on the premises to cover commissions, sold to Whaler September 29, 1926, in exchange for a lake lot of doubtful value. Whaler assigned to C. E. Smith, October 2, 1926, in exchange for four lots in

another Ohio subdivision in which Golner was interested. This gave Smith the whole subcontract equity. Smith assigned to Cooper December 21, 1926, consideration unknown. Cooper traded to defendants Stewart and Stelle in July, 1927, for a stock of goods, at a price of $16,000. The testimony shows that Golner managed the trades from Smith to Cooper and from the latter to Stewart and Stelle. It is not an unfair inference that he had a part in those of Neitzel and Whaler.

In the adjustment of rents, etc., between plaintiffs and Neitzel, $375 owing by plaintiffs was credited to Neitzel on his contract, which paid the installments to October 14th. On September 28th, however, Neitzel assigned the contract to Atlas in exchange for a return of five of the Toledo lots. October 12th, Atlas assigned to Peoples. None of these parties paid any amount on the contract nor the mortgages. Foreclosures were begun, on one of which the period of redemption expired before trial. No attempt to redeem was made. No reason was given for abandoning the contract.

A consideration of the record leaves the abiding impression that, throughout the transaction, Golner was the player and the others his pawns, the purpose was to obtain plaintiffs' contract, and, by transfers to confederates, to build up a case of claimed innocent purchasers and leave the plaintiffs remediless as against the property, and, as far as could be done, against Golner and Neitzel.

It is a settled and salutary general rule that a statement of value is a mere expression of opinion and cannot be made the basis of an action of fraud. But there are exceptions to all generalities. Where a false representation of value is intentionally made to a person ignorant of value, with the purpose that

such statement is to be relied upon, the representation is in the nature of a statement of fact and will support an action of fraud. *Picard* v. *McCormick,* 11 Mich. 68; *Peck* v. *Jenison,* 99 Mich. 326; *Maxted* v. *Fowler,* 94 Mich. 106; *Pinch* v. *Hotaling,* 142 Mich. 521; *Kefuss* v. *Whitley,* 220 Mich. 67; 26 C. J. p. 1220; 12 R. C. L. p. 283.

"The dividing line between a false representation and a mere opinion is not well marked, and cannot be marked in the abstract, as it must necessarily depend upon the facts in a case. If defendant, for the purpose of deceiving plaintiffs as to the title, gave them an opinion he knew to be untrue, and they relied thereon, then he cannot escape liability, for, in such event, it was not an opinion, distinguishable from a false representation." *Steele* v. *Banninga,* 225 Mich. 547.

The fact that the defrauded party may have seen the property before purchasing does not prevent a representation of value from being fraudulent. *Yanelli* v. *Littlejohn,* 172 Mich. 91; *Pound* v. *Clum,* 204 Mich. 28. Plaintiffs had a right to presume that defendants, from their greater experience, had knowledge of the value. *Kefuss* v. *Whitley, supra.*

That Neitzel and Golner intentionally made false representations of value of the Fenkell avenue property is clear. At the highest price put upon it by any disinterested witness, $22,750, with outstanding mortgages of $16,100, plaintiffs would have lost approximately half the cost to them of their equity in the apartment. It is a compelling inference that they were ignorant of the value and relied on defendants' representations. *Hillier* v. *Carpenter,* 206 Mich. 594.

As Neitzel and Golner were co-operating in the transaction, and were together when the representa-

tions were made, both are responsible. *Kefuss* v. *Whitley, supra.*

Plaintiffs ask decree in the amount of the value of plaintiffs' equity of $13,089.18, with interest and less credits. As this amount would be within the measure of damages, whether the transaction was a trade of real estate or sale on security, it will be adopted. The decree will be reversed and one entered for plaintiffs against Neitzel and Golner for such amount, with costs. As to the other defendants, the decree is affirmed, with costs to those filing briefs.

NORTH, C. J., and WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.