KRUITHOFF *v.* GOLDSTEIN.

1. FRAUD—EXCHANGE OF PROPERTY—REPRESENTATION AS TO VALUE
   —FINDING OF COURT—PREPONDERANCE OF EVIDENCE.

   In action for fraud involved in exchange of interests in real es-
   tate, preponderance of evidence *held,* to sustain finding of trial
   court that defendant represented property worth not more than
   $3,000 as having a value of $6,000.

2. SAME—ACTIONABLE STATEMENT OF VALUE OF REAL ESTATE.

   A statement of the value of real estate, although generally con-
   sidered a mere expression of opinion, will support an action
   of fraud where it is false, made intentionally to a person
   ignorant of value, and with the purpose that the statement is
   to be relied upon.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted January 6, 1939.   (Docket No. 62, Calen-
dar No. 39,837.)   Decided March 9, 1939.

Case by Henry Kruithoff and wife against Isadore
Goldstein for damages for fraud in the exchange of
real estate.   Judgment for plaintiffs.   Defendant
appeals.   Affirmed.

*LeRoy Hornbeck,* for plaintiffs.

*Troff & McKessy* (*Joseph S. Folz,* of counsel), for
defendant.

McALLISTER, J.   Plaintiffs, a farmer and his wife,
brought an action for damages for fraud, alleging
misrepresentation of the value of certain real estate
sold to them by defendant, and on a trial before the

court without a jury had judgment in the amount of $3,000, from which defendant appeals.

Plaintiffs lived on a farm in Allegan county which they owned subject to a mortgage. Defendant is an experienced real estate man in Kalamazoo, Michigan, and was the owner of a house and lot in that city. Plaintiffs were ignorant of the values of city property. A third party, Hilton, owned a beer garden and dance hall just outside of Kalamazoo which he had purchased from defendant, and being unable to meet the payments, asked defendant to trade it for him. Defendant was interested in getting a certain brick house in Battle Creek, Michigan, which he thought he could secure by an exchange of the beer garden. Defendant, therefore, submitted to the parties a three-cornered deal in which plaintiffs were to transfer their farm, stock, and tools to Hilton and were to receive from him a promissory note for $400, at the same time securing from defendant an executory land contract for defendant's house and lot at a purchase price of $3,000. Hilton was to transfer his equity in the beer garden to defendant.

It is the claim of plaintiffs that they told defendant that they did not know the value of city property and in answer thereto, the defendant, whom plaintiffs familiarly called by his first name, told them that the house and lot in question was worth $6,000 in a cash deal and $7,000 in a trade and that they could rely on his word in the matter. Defendant, further, showed plaintiffs his house and lot and pointed out the boundary lines. Plaintiffs claim that they relied upon defendant's statements as to the value of the property and made no effort to secure any other opinion in the matter. The deal was carried out; plaintiffs received defendant's property under a contract of purchase for $3,000; they trans-

ferred their farm to Hilton and received a $400 note from him, and defendant secured Hilton's equity in the dance hall. Plaintiffs claim that they afterward discovered that the house and lot had a value of only one half of what defendant represented it to be worth and brought their action for fraud.

There is considerable dispute and confusion as to what defendant told plaintiffs regarding the extent of the property, and it is not clear whether a railroad right-of-way, adjoining the lot in question, extended over onto what was represented by defendant to be his property. However, the assertion of title by the railroad company over part of the property in question was supported in some degree by recognition of its claim by adjoining property owners during a period of many years; and defendant on the trial admitted that he then knew more about the lot in question than he did at the time of the transaction, and realized that there was some question as to whether he owned all of the land described in the contract. Although this matter is discussed in the briefs, it is of small importance in the case as the court assumed that the property in question actually embraced what was represented by defendant at the time of the trade.

The controlling questions in the case are whether there was sufficient evidence to sustain the court's finding that defendant had represented the value of the house and lot as claimed by plaintiffs and whether plaintiffs were entitled to rely on such representations. Both plaintiffs and their young daughter testified that defendant had stated to them that the property was worth $6,000 cash or $7,000 in a trade. Defendant, himself, when asked on cross-examination whether he had not represented to plaintiffs

that the property in question was worth what plaintiffs testified he had told them, said:

"Well there was—those things were talked but when that—that mention about seven thousand, that was when he was placing a value on his property; and I said, 'When you begin to place values that way, I think that if you feel yours is worth seven, this is worth seven.'"

The court found that defendant represented the house and lot to be worth $6,000 cash, and we are of opinion that there is substantial testimony to sustain the court's findings. Numerous qualified and disinterested witnesses testified that the property in question, assuming that the railroad company had no interest in it, was not worth more than $3,000 at the time of the transaction; and the trial court was amply supported by the evidence in its finding to this effect.

It is claimed by defendant that the parties were dealing at arm's length, that there was no relation of trust and confidence, and that any representations as alleged could not result in a fraud upon plaintiffs as they were not entitled to rely upon them.

In *Hillier* v. *Carpenter*, 206 Mich. 594, this court had occasion to pass upon a similar question. In that case plaintiff was a farmer residing a few miles outside of Flint and defendant was a real estate dealer who owned a flat in that city. The value of plaintiff's interest in the farm was $32,000 while the value of defendant's flat was the same amount. Plaintiff testified that defendant represented the flat to be worth $75,000 and would sell in the market for $67,000. Plaintiff exchanged his farm for defendant's flat, at the same time giving back to defendant a mortgage in the amount of $35,000. Defendant denied having made such representations of value to plaintiff but the trial court found that defendant had

made the representations as stated and that plaintiff had relied upon them. On appeal, in passing upon this question, Mr. Justice BIRD, speaking for the court, said:

"If they were actually made and were false it is unnecessary to determine whether they were made in good faith. * * * Of course, if plaintiff did not know the value of the flats, he had a right to rely upon the representations made by defendant, and we are forced to the conclusion that he did not know and that he did rely on the representations, because in no other way could one account for his making a trade which amounted to little less than donating his farm to the defendant."

In *Poloms* v. *Peterson,* 249 Mich. 306, plaintiffs purchased a store from defendant. Plaintiffs testified that when they looked at the store, they told defendant they did not know anything about values; that defendant told them he was going to deal honestly with them; that he knew the values of realty, and the place would easily sell for $5,000 or $6,000. Defendant denied making such representations. In passing upon the question the court said:

"Appellant contends that his statements of this character should be held as a matter of law to have been only expressions of opinion. But under the circumstances disclosed in this record, his statements might well have been found by the jury to have been deliberate misrepresentations made with the intention of deceiving plaintiffs and as having accomplished that result. * * * It falls within the authority of *Steele* v. *Banninga,* 225 Mich. 547; *Pinch* v. *Hotaling,* 142 Mich. 521; *O'Neill* v. *Kunkle,* 244 Mich. 653; and *Gugel* v. *Neitzel,* 248 Mich. 312, wherein we held:

"'It is a settled and salutary general rule that a statement of value is a mere expression of opinion and cannot be made the basis

of an action of fraud. But there are exceptions to all generalities. Where a false representation of value is intentionally made to a person ignorant of value, with the purpose that such statement is to be relied upon, the representation is in the nature of a statement of fact and will support an action of fraud.' "

In *Szarkowski* v. *Pfister*, 262 Mich. 226, a fact situation similar to the above-quoted case obtained; the defendant contended that he should not be held to his false representations of value because such statements were promissory in nature; the court said:

"Where a fraud is committed partly by false promises and partly by false representations of fact, representations, though promissory in character, which are not made in good faith but as part of the scheme to defraud, are nevertheless fraudulent."

In the instant case, plaintiffs were not experienced in the sale of real estate in Kalamazoo and were ignorant of such values in that city. According to their claim, defendant invited them to rely upon his knowledge and his word. Their trust and confidence in defendant was such that they made no inquiry as to the value of the property in question after his representations to them. Defendant knew the value of his property. The court having found that the statements of defendant were false and made with intent that plaintiffs would rely upon them, such representations support an action for fraud.

On a review of the record, we are of the opinion that the court's finding and judgment were sustained by a preponderance of the evidence.

Judgment affirmed, with costs to plaintiffs.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred. North, J., took no part in this decision.